## IN THE MATTER OF TIMOTHY G. SMITH AND OTHERS, CLAIMANTS OF TOWN SITE PROPERTY.

SUFFICIENCY OF SHERIFF'S DEED. If the recitals of a sheriff's deed are sufficient to show that he is acting in his official character and by due authority of law, it becomes a good deed upon being signed and delivered, without reference to acknowledgment.

ACKNOWLEDGMENT OF SHERIFF'S DEED. The failure of an acknowledgment of a sheriff's deed, which is otherwise sufficient, to show that he acknowledged it as sheriff, does not render it invalid, for the reason that the deed is good without acknowledgment.

PARTIES TO SUITS AFFECTING THE LEGAL TITLE TO REAL ESTATE. Where real estate was sold by the sheriff under a decree foreclosing a mortgage upon it, and subsequently was again sold by the sheriff under a decree foreclosing a mechanic's lien upon it in a suit commenced after the first sale was made, and the first purchaser was not made a party to the second suit: *Held*, that the sheriff's deed under the second sale did not divest or affect the legal title in the first purchaser.

PROPER AS DISTINGUISHED FROM NECESSARY PARTIES. In a suit to foreclose a mortgage on real estate, the holder of a mechanic's lien attaching prior to the mortgage may be a *proper* party, but he is not a *necessary* party to pass the legal title to a purchaser under the decree.

RECITAL OF ASSIGNMENT IN SHERIFF'S DEED. The recital in a sheriff's deed made to a person other than the purchaser at the sale, of an assignment by the purchaser to such person, is *prima facie* evidence of such assignment.

CONVEYANCE OF LAND TO AN ADMINISTRATOR. A conveyance of land to which a deceased person was entitled before his death, to his administrator as such, puts the legal title in the administrator, and he can maintain an action affecting it as such holder of the legal title.

SUPREME COURT WILL NOT GRANT RELIEF TO PERSONS NOT ASKING IT. As a general rule, an appellate court will not set aside an erroneous judgment except it be prejudicial to the party appealing; it will not interfere for the purpose of affording relief to one who has not asked relief.

ERRONEOUS JUDGMENT AFFIRMED WHERE INJURED PARTY NOT COMPLAINING. Where there was a controversy respecting title to certain real estate between Smith, Martin, and Burwell, and the judgment of the court below was in favor of Martin, from which only Smith appealed; and it appeared on appeal that

· as to a portion of the land Smith had a better right than Martin, but not so good a right as Burwell : *Held*, that the judgment should be affirmed.

*On Petition for Rehearing :*

SUITS AS NOTICE TO PERSONS' NOT PARTIES. Where the holder of a junior lien against real estate commenced suit and sold it under his decree, and afterwards—but before the execution of a sheriff 's deed—the holder of a senior lien commenced suit, without making the purchaser at the first sale a party : *Held*, that the second suit did not affect the right of the purchaser under the first suit to the legal title, and that the doctrine of *lis pendens*, so far as it applied at all, was in his favor.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

This was an application by Timothy G. Smith, Samuel B. Martin, Lewis Burwell—administrator of John P. Burwell, deceased— and Jennie V. Thompson, conflicting claimants under the Act of January 31st, 1866, (Statute of 1866, 54) to receive from the Hon. S. H. Wright, Judge of the Second Judicial District and Trustee of the town site of Carson City, a deed to a portion of block eighteen in Proctor and Green's subdivision of Carson City. The matter was tried before the Hon. N. Harris, Judge of the Third Judicial District, who for the time being occupied the bench ; and judgment was rendered in favor of S. B. Martin. The appeal was taken by T. G. Smith alone.

*Robert M. Clarke* and *George A. Nourse*, for claimant Smith, Appellant.

*Thomas E. Haydon*, for claimant Martin, Respondent.

*Ellis and Sawyer*, for claimant Burwell.

By the Court, BEATTY, C. J.

In the year 1862, Cheldic & Milne were in possession of certain real estate in the town or city of Carson. During the summer of that year they commenced the erection of a building on their lot. From one A. Curry they obtained stone to place in the walls. This stone Curry commenced furnishing as early as the month of June, and he continued to furnish stone until August of that year. July 3d, 1862, they borrowed some money of one I. N. Green, and on the same day executed a mortgage on this property to secure its payment. On the 28th day of October, 1862, suit was

brought to foreclose this mortgage. The defendants in that suit were Cheldic, Milne, and G. D. Hall. What interest Hall had in the property does not appear. On the 15th of November a decree of foreclosure was filed, and in due time an order of sale issued. On the 15th of December a sale was made, and the plaintiff became the purchaser of the property, and after the expiration of six months a deed was made by the Sheriff to Samuel B. Martin, reciting that Green had assigned his certificate of sale to said Martin.

Curry had on the 7th of October, 1862, before the filing of the bill of foreclosure, filed his lien on the same property for stone furnished in building the stone house thereon. On the 5th of January, 1862, (some three weeks after the foreclosure sale had taken place) Curry filed his bill to foreclose his mechanic's lien. He made Cheldic, Milne, I. N. Green, T. G. Smith, and G. D. Hall parties to this proceeding, but before service of summons on them, dismissed the case as to Green and Smith. In the month of May, 1863, before Martin obtained his Sheriff's deed, a decree of sale was rendered under the mechanic's lien law. An order of sale was issued, and in due course of time a sale took place. T. G. Smith became the purchaser at this sale. On the 14th day of May, 1864, Smith obtained a Sheriff's deed upon the purchase.

At some time subsequent to Martin's obtaining a deed for this property in dispute he entered into possession, and for a considerable period of time he, in conjunction with one J. P. Burwell, kept possession of the property. Burwell seems to have had, or claimed, some interest in connection with Martin. What was the nature of that interest does not very clearly appear, nor is it now important to ascertain. In the year 1864, J. P. Burwell died, and Lewis Burwell administered on his estate. The administrator set up some claim to this property, or part of it, on behalf of the decedent. This claim was either admitted to be just, or some compromise was made by which Martin deeded a portion of the premises in dispute to Lewis Burwell as administrator of J. P. Burwell, deceased. Lewis Burwell then entered into and held possession of a part of the premises in dispute, and Samuel B. Martin the remainder of the same, for a considerable period. Finally, T. G. Smith borrowed

the key from Burwell's attorney of that part of the premises which had been deeded to him, (Burwell) and thus obtained access to to the building, the possession of which he retained up to the commencement of this proceeding.

The land now in dispute continued to be a part of the public domain up to the 7th day of September, 1866, when it was patented to the District Judge of the Second Judicial District in trust for those having, occupying, possessing or being entitled to the possession of the same. Under the provisions of a State law directing the method of executing this trust by the District Judge, this controversy arose. The question to be determined is, to whom shall the District Judge deed this property ? The second section of the State law directing the mode of conveyance and the rules by which the rights of parties are to be determined, reads as follows :

" Any such corporate authorities or Judge holding the title to any such land in trust, as declared in any Act of Congress now in force, or hereafter to be enacted, shall, by a good and sufficient deed of conveyance, grant and convey the title to each and every block, lot, share or parcel of the same, to the person or persons who shall have, possess, or be entitled to the right of possession or occupancy thereof, according to his, her, or their several and respective right or interest in the same, as they existed in law or equity at the time of the entry of such lands, or to his, her, or their heirs or assigns ; and when any parcel or share of such lands shall be occupied or possessed by one or more persons claiming the same by grant, lease, or sale from one or more other persons, the respective right and interest of such persons in relation to each other in the same, shall not be changed or impaired by any such conveyance. Every deed of conveyance to be made by such corporate authorities or Judge, pursuant to the provisions of this Act, shall be so executed and acknowledged as to admit the same to be recorded."

All the parties here derived their claims from one common source, to wit, Chedic and Milne. The Court below held that Smith could claim nothing because of some supposed defect in the certificate of acknowledgment to the Sheriff's deed which he held ; that Burwell could claim nothing because he claimed as administrator of J. P. Burwell, and because if J. P. Burwell had any right, it descended

not to the administrator, but to the heirs, and that the heirs not having applied for the deed, their rights could not be considered. The Court finally made an order directing a deed for the whole of the land to be given to Martin. From this decree Smith only appeals. Counsel give us to understand that Burwell does not appeal because there is no dispute between Martin and Burwell. That Martin is still willing to make good his conveyance to Burwell.

The first question which presents itself to the Court is whether the deed to Smith is defective. We can see no defect in it. The deed, as we learn from the findings of fact, contains all the necessary recitals to make it a good Sheriff's deed. The defect found is that the officer who took the acknowledgment does not certify that he acknowledged it as *Sheriff*, but simply as an individual act. The recitals of the deed determine its character, and if these are sufficient to show that the Sheriff was acting in his official character and by due authority in making the deed, it became a good deed the moment it was properly signed and delivered. It would have been equally good if it had never been acknowledged. The only advantage of an acknowledgment in this case was to save Smith the trouble of introducing other evidence to show its execution. It is not denied that the acknowledgment sufficiently shows that the person who executed the deed was the same who made the acknowledgment. This was all that was required. This deed was sufficient to give Smith any right which he could derive from a sale and deed under the Curry decree.

This brings us then to consider what rights were acquired by Martin under his deed, and what by Smith under his. It is not, we think, questioned but that a title to real estate derived from a sale under a decree of a competent Court having jurisdiction over the subject matter and the parties before it, is good, provided any of the parties before the Court when the decree was made had the title. Where the mortgagor, after executing a mortgage sells the fee to a third party, it has been held that a foreclosure and sale, without making the vendee a party, could not deprive him of his title. But these decisions rest on the ground that when a mortgage is executed that instrument does not pass the title, but a mere equity to the mortgagee, the legal title still remaining in the mort-

gagor, which he may afterwards sell to a third party.  That a
Court of equity cannot divest the legal title without having the
owner thereof in Court.  But if the owner of the legal title is in
Court, we apprehend the title will pass under a decree and sale,
although all the proper parties to a suit in equity may not be in
Court.  When Green filed his bill to foreclose, certainly the legal
title to the land was then in himself, or in Chedic and Milne.

As they were all parties to the suit, undoubtedly a decree and
sale under the foreclosure proceeding passed the title.  But at the
very time this suit was instituted, Curry had or claimed to have
a lien on this property, and was not made a party to the proceed-
ing.  If, then, his claim was good, the effect of the sale of the
property in such case would have been to pass the legal title, but
the purchaser would have only acquired thereby a title subject to
the lien.  Green, then, made his purchase properly on the fifteenth
of December when the sale took place; at that time Curry only
had a lien, or claimed a lien, and no proceedings were instituted to
enforce it.  Green's purchase being good, and he having assigned
that interest to Martin, Martin took it subject to whatever lien
Curry had.  Martin subsequently got his deed, and that deed for
most purposes must be held to relate back to December 15th, the
day the bid for the property was made.  No suit, then, commenced
after that date, in which neither he nor his assignor Green were
made parties, could determine the right of Curry to assert or main-
tain a lien on the property which Green had foreclosed on Decem-
ber 15th.  It follows that the decree made against Chedic and
Milne alone could not support a deed to carry the title from Mar-
tin to the purchaser under the Curry decree.  What equities, if
any, were acquired by Smith under this decree and sale, it is not
worth while to inquire.  It is sufficient to say that long before
Smith got his deed, Martin had acquired the legal title to the
premises, and Smith's deed did not divest the legal title of Martin.
Nor could Smith's equity at most have been more than a right to
enforce the payment of the Curry lien out of the property in a
proceeding in which Martin was made a party, and allowed to de-
fend and contest the existence of the lien.  No such suit having
been instituted, the title and right of possession remained in Mar

tin until he parted with his title to a portion of the ground to Burwell as administrator.

When he deeded part of it to Burwell *as administrator*, etc., there is no doubt but that Burwell took possession of the premises deeded to him, and became, and still is, entitled to the possession of the same.

It was objected on the trial that Martin could not hold under the Sheriff's deed, or derive any advantage from it, for the reason that the Sheriff's return, and perhaps other evidence, showed that the sale was made to Green, and there was no legal evidence of any assignment of Green to Martin. We think no evidence of this fact was required, but the recitals of the Sheriff's deed. To support a title derived from a Sheriff's sale, it is necessary to show the judgment or decree, and the order of sale.

When you have shown the judgment and an execution, or order of sale placed in the officer's hands, then the law presumes that all the recitals contained in the deed made in pursuance of the order of sale, are true. The Sheriff had a right on sufficient evidence of the assignment of the certificate of sale to make the deed to Martin. His recital was *prima facie* evidence of the fact, and the deed passed the title as effectually as if Martin had been the original purchaser. Nor would it make any difference whether this assignment of the certificate by Green was by writing on the certificate itself or on a separate piece of paper. Nor could the form of the assignment be material. All that was necessary to justify the Sheriff in making the deed to Martin, was satisfactory and conclusive proof that Green had transferred the benefit of his purchase to Martin.

It was objected to Burwell's claim, that he only appeared in his representative capacity as administrator of J. P. Burwell—that if J. P. Burwell had any claim to the land upon his death, it descended to his heirs ; that the administrator could not claim a conveyance to himself of what the law would decree should be deeded to the heirs. That as the heirs did not appear in the case to assert their claim, the Burwell claim could not be asserted or taken notice of in this proceeding.

This, we think, was a mistaken view of the case. The title, it

will be recollected, vested wholly in Martin.  If J. P. Burwell had
any claim, it was a mere equity derived through Martin.   Without
stopping to inquire what Martin should have done in the premises,
whether he should have conveyed the interest to which J. P. Bur-
well had acquired an equity to his heirs or to his administrator, we
know what he did do—he conveyed it to Lewis Burwell as adminis-
trator.    Such a conveyance put the legal title in Lewis Burwell,
and he had a right to hold and enjoy the possession of the land.
That he held it in trust for the payment of the debts of decedent,
and if not needed for that, then for his heirs, there can be no
doubt.    But this trust did not affect his legal right to the land.
Nor was there any impropriety in styling himself the administrator
of J. P. Burwell.   If it was not necessary for him to do so, then
it was but surplusage, and did no harm.

We have already shown that Smith derived no title or right of
possession as against Martin from his Sheriff's deed, nor would he
derive any right of possession as against Burwell, by obtaining the
possession of the property as he did by breach of faith, in making
an improper use of the key borrowed from Burwell's attorney.

From these premises, it necessarily results that the order should
have been made on the District Judge of the Second Judicial Dis-
trict, to make a deed for that part of the premises in dispute to
Samuel B. Martin, and for the rest to Lewis Burwell, as adminis-
trator of J. P. Burwell, deceased.    The Judge, however, is direct-
ed to deed the whole to Samuel B. Martin, and from this decree
Burwell, who is injured thereby, does not appeal, but Smith, who
is not injured, does appeal.

The question then arises, what shall this Court do in such case ?
As a general rule an appellate Court will not set aside an erroneous
judgment except it be prejudicial to the appellant.    It will not
interfere with a judgment for the purpose of affording relief to one
who has not asked relief.    Under this rule Burwell would be ex-
cluded from asking relief, as he has not appeared nor complained
of the injustice done him.   So far as Smith is concerned, he would
as against Martin be entitled to a decree for a portion of the
property.    For the possession even of a naked trespasser is good
as against a stranger who has no kind of claim to the land held by

the trespasser. But as against Burwell, Smith had no rights. All three parties, Smith, Burwell, and Martin, were before the Court. Considering the title and claims of all, Smith had no right to any portion of the property. The giving the whole to Martin was a wrong, but it was a wrong against the rights of Burwell; if he does not complain, Smith has no right to complain for him.

Judgment affirmed.

JOHNSON, J., being disqualified, did not participate in the above decision.

## ON PETITION FOR REHEARING.

By the Court, BEATTY, C. J.

The appellant, T. G. Smith, asks for a rehearing in this case, and whilst counsel admits that the rule of law as to necessary parties to a foreclosure suit is correctly stated in the opinion, it is contended either that the Court made a mistake as to the facts in this case, or else a wrong application of the principles of law to the existing state of facts. Both parties claim title from Chedic and Milne, and so far as the facts bear on the point in controversy, they may be stated as follows: Chedic and Milne were in the month of June, 1862, the owners of and in the possession of the property in dispute. On the 14th of June, 1862, one A. Curry commenced furnishing materials for the construction of a house on the premises; on the 16th of August he finished the delivery thereof, and on the 7th of October following filed his lien for such materials.

In the mean time, on the 3d of July, Chedic and Milne had mortgaged the premises to one Green, the mortgage being dated July 3d, 1862. On the 28th day of October, Green brought suit to foreclose, not making Curry, who claimed the mechanic's lien, a party. In this foreclosure suit a decree was had on the 15th of November, a sale made thereunder on the 15th of December, and a deed made to the assignee of the purchaser in October, 1863.

Curry commenced a foreclosure suit on the 5th of January, 1863, on his lien, and made the mortgagee, Green, a party, but before

service dismissed as to him and only proceeded against the mortgagors. His decree was rendered in May, 1863, and a sale took place in July ; a deed was given under that sale in May, 1864.

In our former opinion we held in effect that in the proceedings of Green against Chedic and Milne he had made all the parties defendants whom it was necessary to make such in order to pass the legal title, but he had not all the *proper parties* before the Court, consequently the sale and passage of the title did not divest Curry's lien.

The petition for rehearing seems to admit the rule of law as properly laid down, and that the title would have passed but for the intervention of Curry by suit before the final consummation of title in the assignee of the purchaser at Sheriff's sale. But it is contended that as Curry brought suit before the title was finally consummated under the other decree, and as his lien is claimed to be the elder, the title acquired under Curry's judgment relates back to the time his suit was commenced, and takes precedence of the other title.

Let us now examine this claim. We may, for the consideration of this subject, treat both Curry and Green as mere lien holders, having no title to the realty. If either party proceeds against the owner of the fee without making the other lien holder a party, he can only sell the property subject to the other lien. And this is equally the rule whether the proceedings be on the senior or junior lien.

Under this rule then Green had a right to foreclose, making only Chedic and Milne parties. Under such proceeding he could divest them of their legal title and vest the same in himself or any other person who might purchase at the sale under his decree. Curry had the same right and nothing more. He, by proceeding against Chedic and Milne alone, could no more affect the rights of Green than Green could, by a similar proceeding, affect the rights of Curry.

Green, then, instituted the first suit, and his suit had ripened into a decree, and a sale had been made before Curry commenced proceedings. This, it is admitted, was regular, and would have passed the title (subject, of course, to Curry's lien) to the pur-

chaser at Green's sale had not Curry's suit intervened.     How, then, could Curry, by his own act, nullify and destroy the proceedings of the Court, which are admitted to have been regular up to this time. Surely the doctrine of *lis pendens* which is invoked by the petitioner in favor of Smith, who held under the Curry decree, applies with double force in favor of Martin, who holds under the Green decree.     When Curry brought his suit he knew, in contemplation of law, and probably did actually know, that Green had already brought suit, obtained a decree, and caused a sale to be made under his decree.     These proceedings were legal, and no subsequent act of Curry's could make them illegal.     The title, then, did pass by the sale and subsequent Sheriff's deed under Green's proceedings.

When the Sheriff made a deed to Smith, the title had already passed, consequently that deed conveyed nothing.

The doctrine of *lis pendens* instead of coming to Smith's aid, is directly in conflict with his title.     Green having brought his suit first, the purchaser under these proceedings is as much protected against the subsequent acts of Curry, done through the intervention of a Court, (Green not being a party to such subsequent proceedings) as he would be against the acts of Curry and Chedic and Milne done out of Court.     Smith, claiming under this decree, has no greater right, as against Martin, than if Curry and Chedic and Milne had, during the pendency of Green's suit, made a voluntary conveyance of their respective rights to him.

A rehearing is denied.

JOHNSON, J., did not participate in the decision.