ADDISON ROADS, APPELLANT, V. EXPERIENCE ESTA-BROOK, APPELLEE, IMPLEADED WITH J. B. WHIT-TIER, APPELLANT.

[FILED SEPTEMBER 28, 1892.]

1. **Taxes:** FORECLOSURE OF LIEN. In an equitable proceeding to foreclose a lien for taxes the court will not consider questions which go only to the manner of the assessment or levy of the tax in question or other irregularity or informality in the proceedings.

2.———: Validity of Assessment: Failure to Record Plat. In the summer of 1854 one J. surveyed the site of the city of Omaha and subdivided it into lots and blocks and streets and alleys, marking all corners with hardwood stakes. He made a manuscript plat of the area surveyed, showing the streets and alleys, lots and blocks, but containing no figures indicating the dimensions of the lots or the width of the streets and alleys. Said plat was soon afterward lithographed and has ever since been generally recognized as authentic by the public and property owners of the city. In 1857 the mayor, who had in the meantime entered said town site, under the laws of congress, in trust for the owners and occupants thereof, conveyed by deed certain lots therein to the defendant, who immediately inclosed them in accordance with the lines run by J. and the stakes as originally set by him. He has since repeatedly recognized said plat and survey as authentic by executing leases and conveyances of parts of said property by reference thereto. The property of the city, including the lots in controversy, has from the first been assessed for taxation in accordance with the said plat, and the streets adjacent to said lots improved by the city at great expense. *Held,* That taxes assessed against said property when listed for taxation according to the description on the said plat will not be held void for the reason that said plat was never recorded.

3. Defective Title: Recovery of Taxes Paid. When the title of a purchaser for delinquent taxes shall fail he is entitled to recover in a proceeding to foreclose his lien, not only the taxes for which the property in question was sold and such as are subsequently levied, but also such as were levied for previous years and paid subsequent to the date of his purchase.

Appeal from the district court for Douglas county. Heard below before Wakeley, J.

*Montgomery & Jeffrey,* for appellants:

In a proceeding in equity to enforce a tax lien the court will look to the statute and not to the assessment as the foundation of such lien, and will regard the amount of taxes against the property, as borne upon the books of the county, as unalterably established. (*Otoe County v. Mathews,* 18 Neb., 470; *Lammers v. Comstock,* 20 Id., 345; *Merriam v. Dovey,* 25 Id., 622.) Where there is no re-

corded plat of city property, a description by lot and block, referring to the recognized survey, is sufficient for levy and assessment of taxes, and by the recognized survey the description by lot and block is definite. (*Holls v. Streitz,* 16 Neb., 249; *Bryant v. Estabrook,* Id., 223; *Janesville v. Markoe,* 18 Wis., 356; *Finney v. Boyd,* 26 Id., 356.)

*E. Estabrook, contra:*

Land cannot be assessed for taxes as a village lot where there is no recorded plat. (*Johnson v. Scott,* 11 Mich., 232; *Manley v. Gibson,* 13 Ill., 308; *Jones v. Johnston,* 18 How. [U. S.], 154; *People v. C. & A. R. Co.,* 96 Ill., 369; *Shepard v. Shepard,* 36 Mich., 174; *Sandford v. People,* 102 Ill., 374; *Sharpe v. Dillman,* 77 Ind., 280; *Merton v. Dolphin,* 28 Wis., 459; *People v. Reat,* 107 Ill., 584; *Village of Winnetka v. Prouty,* Id., 221.)

Post, J.

The plaintiff herein filed in the district court of Douglas county five petitions praying for decrees of foreclosure of tax liens upon as many separate lots of land, to-wit : the east thirty-two feet of lot 2, and all of lots 3, 6, 7, and 8 in block 70 in the city of Omaha. The several actions were consolidated by order of the district court and tried together. From the judgment of the district court the plaintiff appeals. From the bill of exceptions it appears that on the 8th day of September, 1875, the property above described was sold by the treasurer of Douglas county to plaintiff for delinquent taxes and that treasurer's deeds were subsequently executed in his favor. The deeds aforesaid it is conceded are void on account of informalities in their execution. Plaintiff has also paid taxes subsequently assessed against each of said lots. In the action involving lot 3 Jackson B. Whittier is made a defendant since he also claims a lien by reason of a subsequent purchase for delinquent taxes. He answered setting up his lien and

praying for a decree of foreclosure. There is no contro-
versy with respect to the purchase of the property for de-
linquent taxes, or the amounts of the payments therefor,
by plaintiff or Whittier. The defenses relied on are two
in number and will be noticed in the order presented.

"First—That the proceedings of the assessor and other
officers preceding the charging of the taxes upon the books
of the city and county treasurers were irregular and of so
defective a character as to render the taxes charged void
and not a lien upon the property."

The principal objections to the proceedings are that the
property was not listed by the owner, and no refusal to
list, or other reason why not so listed, was given by the
assessors; that the assessor's oath was not attached to the
rolls; that the name of the owner was not, in most in-
stances, given, and, in such instances, that the lots were
not assessed as unknown, and other like irregularities. No
claim is made to the effect that the amounts charged were
excessive, or that the payment thereof would burden the
defendant beyond his fair proportion of the taxation re-
quired for the needs of the public. It has been frequently
held by this court that in equitable proceedings to foreclose
liens for taxes we will not consider objections which go
only to the manner of the assessment, or the levy of the
tax, or the conducting of the sale. (See *Otoe County v.
Mathews*, 18 Neb., 466; *Lammers v. Comstock*, 20 Id.,
345; *Merriam v. Dovey*, 25 Id., 622.) These cases are in
point and are conclusive of the question.

The second defense is that the property in question has
no legal existence, for the reason that no such description
of land is anywhere recorded. The material facts, as shown
by the bill of exceptions, are as follows: Early in the year
1854 several citizens of the state of Iowa associated them-
selves together under the corporate name of the Council
Bluffs and Nebraska Ferry Company, for the purpose of
locating a town on a site within the present boundaries of

the city of Omaha. For that purpose they employed A. D. Jones to make a survey of the premises. At that time Nebraska had just been organized as a territory, but no part thereof had been surveyed by the government.

Mr. Jones began his work on the west bank of the Missouri river, near what is now known as Iler's distillery, from thence he ran a line west to Sixteenth street, and from thence north and west to about Byron Reed's present addition to the city, and from thence directly north to Webster street, and from thence east to the Missouri river, and thence along the line of the river south to the place of beginning. The claim thus laid out was known as the claim of the Council Bluffs and Nebraska Ferry Company. Afterwards the company employed Jones to survey a part of this claim into lots and blocks, streets and alleys; he did so, and made a plat of the area now lying between Jackson street on the south, Webster street on the north, Ninth street on the east, and Sixteenth street on the west. He made a manuscript plat thereof, and the town which he thus laid out was called Omaha. He designated the corners of lots and blocks and streets and alleys with hardwood stakes driven into the ground. Such stakes remained in existence for many years thereafter, and many of them up to a comparatively recent date, but at the present time all have rotted away or have been otherwise destroyed. According to this survey and the plat subsequently prepared by Mr. Jones, block 70, the property in controversy, was subdivided into eight lots fronting endwise toward the east and west. The dimensions of the lots and blocks were not indicated on the plat, but from the bill of exceptions it appears that the lots were sixty by one hundred and thirty-two feet in size. Block 70, as shown by the Jones plat and all subsequent plats and maps of the city, is bounded as follows : On the east by Ninth street, on the west by Tenth street, on the south by Capitol avenue, and on the north by Davenport street.

From the plat or manuscript map aforesaid the first printed map of Omaha was copied, and which has since been known as the A. D. Jones map. In the year 1855 the company aforesaid caused another plat to be made, embracing the area surveyed by Jones and including other contiguous territory, all of which they called the plat of Omaha city. That part surveyed by Jones was not resurveyed, and there never has been a survey for the purpose of designating streets and alleys, lots and blocks, other than that of Mr. Jones. Upon the plat of the second survey and the map subsequently issued in accordance therewith no dimensions of lots or streets and alleys appear. Upon it block 70 is designated as on the first or Jones map, subdivided into eight lots, but fronting endwise toward the north and south instead of the east and west as on the Jones map. In 1857 another map was printed, known as the Poppleton & Beyers map, purporting to embrace the same area as the former maps. On this map block 70 appears as on the Jones map, except that the lots front endwise to the north and south as in the last named map. Afterward a map was issued by O. F. Davis, which, with respect to block 70, followed that of Poppleton & Beyers'. It appears that the two maps last named were in common use during a limited time only. They were followed by maps issued by Byron Reed and Geo. P. Bemis, which, as regards block 70, conform to the Jones survey and map. Subsequent maps have followed the Jones survey. During the years when the taxes in controversy were levied, either the Reed map, or others subsequently issued, but conforming to the Jones survey, have been in general use in the city.

Shortly after the Jones survey the land included therein was entered in trust for the owners and occupants thereof, by the mayor of Omaha, who subsequently conveyed the property, designating the lots and blocks as indicated by the Jones map. In the summer of 1855 defendant Estabrook

took possession of the lots in controversy, and has ever since continued in possession thereof, either by himself or tenants. On the 5th day of May, 1857, Enos Lowe, mayor, conveyed said lots to defendant by deed, which is the basis of his title. In said deed, at the instance of the defendant, the description of the lots is made to conform to the subdivisions of the Jones map, and also of that of Poppleton & Beyers, the description being as follows : "All those tracts or parcels of land being in the city of Omaha, * * * as originally surveyed by A. D. Jones, and lithographed by the Council Bluffs and Nebraska Ferry Company, to-wit, lot 8, in block 70, being the south half of lots 7 and 8, of the plat of Poppleton & Beyers," etc. He testifies that he had the property thus described in accordance with both maps as a precaution in order to avoid future doubt or uncertainty as to the boundaries of his property. It appears from the testimony of J. M. Woolworth, who prepared the form of deed used by the mayor, and before whom most of the deeds were acknowledged, that as a rule such deeds contained no reference to any plat or map except the so-called Jones map. Among other things the witness says: "Some of the parties applying for deeds requested that reference be made to the plat of Poppleton & Beyers, but not many." Mr. Poppleton testifies that the Poppleton & Beyers map was a business venture of the firm of which he was a member. It was prepared by his partner, and he is unable to say whether or not the latter had ever surveyed the territory in question or had ever been engaged in subdividing any part thereof into lots and blocks.

It is apparent to us from the record that the maps prepared from the Jones survey, and on which the lots in block 70 front endwise to the east and west, are the ones generally recognized and accepted as correct by the property owners and the public officers of the city of Omaha and Douglas county. In accordance with that survey the

property of the city has been assessed for taxation for more than thirty-five years. Omaha has in that time grown from a frontier village to a city of 150,000 inhabitants. Defendant's property has in the meantime increased in value many times. Thousands of dollars have been contributed by adjoining proprietors as taxes levied by the county and city, which have been expended for costly improvements, thereby enhancing the value of the property in question. Shall he now be relieved from his just contribution to the public revenue because the original proprietors of the town site have neglected to comply with a direction of the statute, to have a copy of the plat filed and recorded in the proper office? The survey, although irregular in not recording the courses, distances, etc., is the one through which defendant must trace his title for any purpose. From the stakes set out by the surveyor the boundaries of the lots were readily determined, and according to them he enclosed the lots in 1855. He has also subsequently recognized the accuracy of the survey and map of Mr. Jones by leases and conveyances of parts of the property in question. For instance he has frequently executed leases for parts of the property which must be referred to the Jones survey, as otherwise they would include property which he did not own, occupy, or claim. Thus far we have made no reference to the case of *Bryant v. Estabrook*, 16 Neb., 217. In that case the same question was presented, involving the same property, when it was held that the city of Omaha, having in fact been laid out into streets and alleys, lots and blocks, more than twenty-five years previous, during all of which time the streets and alleys had been used and enjoyed by the public and the lots taxed as such, the regularity of the proceeding, including the laying out, platting, and recording thereof, will be presumed. It is urged that on the facts of this case it is distinguishable from that, but we think otherwise. The view we are disposed to take is that the facts

disclosed by the evidence in this case, except as to the filing and recording of the plat, are those which, as said by the court in *Bryant v. Estabrook*, will be conclusively presumed.

In a brief of considerable length and unusual merit counsel for defendant has assailed the rule as well as the reasoning in *Bryant v. Estabrook*. In that case it is said: "The authorities are not all one way, and yet it is perhaps fair to say the weight of authority cited sustains his (defendant's) position." We are constrained to make the same admission. The earlier cases and many recent ones in other states tend to establish the rule that for the purpose of taxation the property must be described by reference to the government survey, or, if subdivided, by reference to an authenticated plat. The proposition, however, is that on the facts in this case the defendant is in no position to invoke that rule in his behalf. Such was the view of the court in *Bryant v. Estabrook*. We are convinced that the rule there announced is in all respects equitable, and are satisfied to adhere to it.

There is a further contention, viz., that as a considerable portion of the taxes in question were paid by plaintiff after his purchase in 1875, and were levied for years prior to the taxes for which he purchased, he cannot recover in this action. This claim is based upon the language of the act of 1871, which provides that "such purchaser, his heirs or assigns, may pay all taxes lawfully assessed on the real estate after such purchase, and when the said title shall fail shall have a lien for all such taxes."

In *Miller v. Hurford*, 11 Neb., 385, the land had been sold for the taxes of 1873 and 1874. In the decree of foreclosure, taxes subsequently paid for the years 1870 and 1871 were included. In the opinion the present chief justice says: "We are not entirely clear as to the right of the plaintiff to include taxes paid for the years 1870 and

23

1871, but no objection is made to the judgment on that ground." In *Shoenheit v. Nelson*, 16 Neb., 235, the chief justice, referring to the doubt expressed in *Miller v. Hurford*, of the right to include taxes paid since the purchase of land at tax sale but for previous years, says, "A mortgagee to protect his security may pay taxes which are a legal charge upon the mortgaged premises." And after citing authorities in support of the foregoing proposition, continues: "The extent to which this rule would apply in favor of a purchaser at tax sale is not now before the court, although no good reason would seem to exist against its application in such case." The act of 1871, however, is not the only provision upon the subject. By section 1 of the act approved February 19, 1875 (sec. 1, art. V, revenue law), it is provided, "That any person, persons, or corporation having by virtue of any provisions of the tax or revenue laws of this state a lien upon any real property for taxes assessed thereon may enforce such lien by an action in the nature of a foreclosure of a mortgage for the sale of so much real estate as may be necessary for that purpose, and costs of suit." By the revenue law then in force taxes were declared to be a perpetual lien on the property. It was in terms provided by section 64 (Gen. Stats., 922), that the owner may redeem within two years, by paying the amount named in the tax certificate, with interest, together with all other taxes subsequently paid, whether for any year or years previous or subsequent to said sale. The various provisions above referred to must be construed together. Our conclusion from them is that plaintiff's title having failed, he is entitled to recover all the taxes for which he has a lien, which will include not only taxes for which the property was sold, and such as were subsequently levied, but also such as were levied for previous years and paid subsequent to the date of his purchase. The judgment of the district court is reversed and the case remanded for an accounting in that court, or if plaintiff

should elect to have final judgment entered in this court it will be referred here for an accounting.

JUDGMENT ACCORDINGLY.

THE other judges concur.