DOUGLAS COUNTY ET AL., APPELLANTS, v. ELIZABETH E. SHANNON: METROPOLITAN UTILITIES DISTRICT OF OMAHA, APPELLEE.

FILED JANUARY 4, 1934. No. 28675.

*Paul F. Good,* Attorney General, *Edwin Vail, Henry J. Beal* and *Frank H. Woodland,* for appellants.

*Seymour L. Smith* and *Dana B. Van Dusen,* contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

PAINE, J.

The state of Nebraska, the county of Douglas, and the school district of the city of Omaha, as appellants, appeal from a supplemental decree of the district court directing that the proceeds of a county tax foreclosure, being insufficient to pay all tax liens against the property, should

be prorated between the general taxes and special assessments, without distinction. The Metropolitan Utilities District of Omaha is the appellee.

This action was brought by the county attorney of Douglas county, under a resolution passed March 9, 1926, by the board of county commissioners, directing the county attorney to proceed to foreclose the lien of all taxes delinquent in said county which had been offered for sale for taxes for three consecutive years and not sold for want of bidders, under the provisions of section 77-2039, Comp. St. 1929.

A decree of foreclosure was entered March 26, 1927. Upon September 11, 1929, after sale and confirmation, a motion was filed, asking the court to determine the proper method of distribution of the proceeds of the sale between the various governmental subdivisions entitled to participate in said distribution, as such proceeds were insufficient to pay in full the costs of the proceedings and the lien of the taxes and special assessments upon the property foreclosed.

It was the purpose of the motion of the county attorney to have a determination whether or not the special assessments ranked with the general taxes, which would require that the proceeds should be prorated as to all taxes and special assessments, or whether the funds, after the payment of the costs, should first be applied to the payment in full of the general taxes with interest, and the balance, if any remaining, then be prorated on such special assessments as might remain.

Upon August 31, 1932, a supplemental decree was entered that the proceeds of the sale should be apportioned *pro rata* between the county of Douglas, city of Omaha, school district of Omaha, and the Metropolitan Utilities District of Omaha, based upon the proportion between the total taxes and special assessments due each one of these governmental subdivisions, and without distinction between such subdivisions, and also without distinction between general and special taxes.

In other words, the court directed that there was no priority as between general taxes and special assessments, and that the fund should be prorated among the various political bodies holding tax liens, regardless of whether such liens arose from general taxes or special assessments. From this order the state of Nebraska, the county of Douglas, and the school district of Omaha appeal. The Metropolitan Utilities District is appellee herein, as its contention was upheld by the trial court. The city of Omaha appears to have no interest in this appeal, for the reason that it has both general taxes and special assessments involved, and would not, therefore, be financially affected by the outcome of this appeal.

The history of tax legislation relating to the point under discussion in the case at bar began perhaps with the General Statutes of Nebraska for 1867, p. 323, in which section 54 of the revenue law declared: "Taxes upon real property are hereby made a perpetual lien thereupon." In the general revenue law passed in 1873, this same statement is found in section 51, p. 917, and in the general revenue law of 1879 it can be seen that quite often the word taxes had come to be used to include both general taxes and special assessments.

In the Session Laws of 1879, at page 182, there is perhaps the first act to authorize certain officers to purchase real estate at tax sale, and in 1881, Laws 1881, ch. 75, for the first time the legislature authorized county commissioners to foreclose tax liens in an emergency act, and provided, in section 4 thereof, that the sheriff or special master commissioner should conduct such tax foreclosure sales in the same manner as a sale upon a foreclosure of a mortgage was conducted. In section 4473, Comp. St. 1899, it refers to the county purchasing "taxes of any kind." It is contended by appellee that from 1867 until 1903 there was no declaration of priority between general taxes and special assessments, and that the word taxes included both.

Passing now to the decisions which interpreted these

various sections of our laws in force during these years, we find that in *Wilson v. City of Auburn*, 27 Neb. 435, decided October 3, 1889, Chief Justice Reese set out that special assessments should be collected in the same manner as other city or village taxes. Following this case, it is urged that for a period of 15 years decisions of this court interpreted the term taxes to include special assessments. Then the whole matter came squarely before this court when Judge Grimes held in Logan county that a county was entitled to foreclose its statutory lien without first acquiring a tax sale certificate. When the appeal reached this court, we find two opinions, by Judge Sullivan and Judge Holcomb, covering 27 pages, entitled *Logan County v. Carnahan*, 66 Neb. 685, which held that there could be no foreclosure of a tax lien unless it was based upon a tax deed or a tax sale certificate. As there had been a great number of foreclosure proceedings conducted by counties without the purchase of tax sale certificates, a bill was immediately introduced in the legislature to validate all of these former sales. This bill had an emergency clause attached, and was approved April 8, 1903, and is found in the Laws of 1903 at chapter 77. There can be no question but what this validating act implies that, where the proceeds of former foreclosures brought by the counties did not bring sufficient proceeds to pay taxes in full, after the payment of the costs the balance had been prorated upon the several tax liens.

The General Revenue Act, passed in 1903, provided in chapter 73, sec. 231, that each county should have a lien upon each tract of land for all taxes, whether the same are state, county, township, school district, road district, city, village, or other municipal subdivisions, and may foreclose the lien, and section 238 provided that, if the proceeds of the foreclosure sale are not sufficient to pay the costs and all taxes, the same shall be prorated. This act gave to the county a blanket lien for all taxes. This section has now become section 77-2039, Comp. St. 1929, and is the section relied upon by the appellee.

On the other hand, we find that in 1903 the legislature also passed the scavenger act, found as chapter 75 in the Session Laws for that year, and in section 21 thereof provided that, if the proceeds from a tax foreclosure sale were not sufficient to pay all of the taxes assessed against any particular tract of land, the proceeds should be prorated, after the payment of costs, by paying, first, the general taxes, and then the residue should be applied upon special assessments, and while this only applied to the distribution of proceeds from scavenger tax foreclosure sales, yet it made a clear distinction between general taxes and special assessments.

In *Flansburg v. Shumway*, 117 Neb. 125, this court held that there was a distinction between taxes and special assessments, and that general taxes for state, county, school districts, etc., were a first lien on real estate and take priority over all other incumbrances and liens thereon, including special assessments.

By examining the revenue act of 1903 further, we find that sections 17 and 18 of chapter 73 provided that all general taxes due the state, county, school districts, etc., should be a first lien on real estate, and take priority over all other liens thereon, and that special assessments upon the same real estate should be subject to the general taxes. These sections, with a slight change in the language, but with the meaning intact, are found as sections 77-206 and 77-207, Comp. St. 1929, and are claimed to be in conflict with that part of section 77-2039 relied upon by the appellee, and set out hereinabove. It is the duty of the court to ascertain the intention of the legislature and give a natural construction to these conflicting sections, which if possible shall give full effect to all three sections. The construction contended for by the appellee, that the proceeds of a tax sale foreclosure, if insufficient to pay all of the taxes standing as a lien against the land, should be prorated between the general taxes and the special assessments in equal proportion, involves disregarding sections 77-206 and 77-207 entirely. This would hold

that these two sections are meaningless, while in the opinion of the court they should be given full force and effect.

All of these sections of the statute just referred to must, of course, give way if found in any way to be in conflict with our Constitution, or, if not in direct conflict, must be interpreted according to the plain provisions of the Constitution which govern them.

Section 4, art. VIII of the Constitution, provides that the legislature shall have no power to release or discharge any property from its proportionate share of the taxes, and provides further that no commutation of such taxes may be authorized in any form whatever. This section was found in the Constitution of 1875 at article IX, sec. 4, and, in discussing it, this court, in *Farnham v. City of Lincoln,* 75 Neb. 502, held that this section did not apply to special assessments to pay for local improvements.

With this clause of our Constitution in mind, the sections under consideration seem to require that the proceeds from such county tax sale foreclosures be handled exactly as the foreclosures of certain mortgages bearing definite priority one over the other, and that the mortgage holding a first lien will be preferred over subsequent liens. The only difference between such an action and the case at bar is that the priority of tax liens is not fixed by contract, but is, in the case of the proceeds of a tax foreclosure, fixed by the provisions found in our Constitution and statute, and under section 77-206, Comp. St. 1929, general taxes due to a state, county, school district, and other governmental subdivisions shall be a first lien on the real estate upon which it is levied, and shall be superior to special assessments levied and assessed against the same real estate. *Harlan County v. Thompson, ante,* p. 65; *Ittner v. Robinson,* 35 Neb. 133; *Commercial Savings & Loan Ass'n v. Pyramid Realty Co.,* 121 Neb. 493; *Mutual Benefit Life Ins. Co. v. Siefken,* 1 Neb. (Unof.) 860; 25 R. C. L. 189, sec. 102; *Iowa Securities Co. v. Barrett,* 210 Ia. 53.

We hold, therefore, that a district court, in entering a decree upon the proceeds from a tax foreclosure, should direct, first, the payment of costs, and, second, the payment of all general taxes to state, county, school district, and other governmental subdivisions in full. Then, after such general taxes and costs are paid in full, if the proceeds are insufficient to pay the outstanding special assessments in full, such proceeds shall be prorated equitably towards the payment of such special assessments, and the tract of land shall thereupon be released from all general taxes and special assessments levied against the same.

We find that the trial court, in directing that the proceeds of a county tax sale foreclosure should be prorated equally between general taxes and special assessments, was in error. Decree reversed and cause remanded.

REVERSED.