H. J. Coffin, Appellant, v. Old Line Life Insurance
Company et al., Appellees.

295 N. W. 884

Filed January 17, 1941.    No. 30823.

*B. A. Rose* and *Prince & Prince*, for appellant.

*Albert S. Johnston* and *Squires, Johnson & Johnson*, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and TEWELL, District Judge.

EBERLY, J.

This is an action instituted by H. J. Coffin against the Old Line Life Insurance Company, a corporation, *et al.*, to quiet his title in and to a fractional tract of land situated in Custer county, Nebraska, against the claims of defendants evidenced by a decree foreclosing certain tax liens upon said premises, rendered in the district court for Custer county on April 2, 1929, in favor of plaintiff in a case wherein E. B. Cowles was plaintiff and Christie Pool, Mary E. DeBusk *et al.*, were defendants, and of which decree the Old Line Life Insurance Company was and is the assignee and owner. A trial to the court resulted in a finding and judgment in favor of defendants and against plaintiff. Plaintiff appeals.

It appears without question that defendant insurance company's rights as assignee are based upon the following, viz.: A purchase by E. B. Cowles of the real estate in suit at a tax sale duly held by the county treasurer of Custer county on March 8, 1926, for the delinquent taxes for the years 1920, 1921, 1922, 1923, 1924 for the sum of $190.53 and the subsequent payment by E. B. Cowles of the taxes assessed thereon for the years 1925 and 1926. A tax foreclosure proceeding was instituted thereon in the Custer county district court on February 12, 1929, by E. B. Cowles against Mary E. DeBusk and ———— DeBusk, first name unknown, her husband, as owners of such real estate. In said court and in said cause, after service of process had been duly had upon said defendants above named and each

of them, a decree of foreclosure and sale was on April 2, 1929, duly made and entered in favor of E. B. Cowles in the sum of $338.95 with interest at 12 per cent. from date of decree, together with attorney fees in the sum of $33.89, which was adjudged a first lien on the premises referred to herein, and which remains wholly unsatisfied. By stipulation of parties it appears that this decree has been duly assigned to and is now owned by the Old Line Life Insurance Company, a corporation. It also appears that on November 5, 1928, the land here in suit was by the county treasurer of Custer county sold to and purchased by H. J. Coffin for the delinquent taxes for the year 1927, amounting to the sum of $27.34, and that as the owner of such certificate of tax sale thereof he made payments of taxes assessed against said premises for the years subsequent to 1927; further, that said H. J. Coffin thereupon commenced an action to foreclose such tax sale certificate, and upon taxes subsequently paid by him as holder and owner thereof, and thereafter upon due service of process upon the defendants therein named, did procure a decree of foreclosure for nonpayment of such taxes. Said property was not redeemed as provided in the decree so entered, and a sale thereof was duly had in accordance with the decree of foreclosure and as provided by law, and such sale was confirmed by the district court for Custer county on November 14, 1932. On November 25, 1932, pursuant to such decree of confirmation, the sheriff of Custer county duly made, executed and delivered to H. J. Coffin his sheriff's deed, which in terms properly conveyed to Coffin the real estate in suit. This sheriff's deed was duly filed for record in the office of the register of deeds of Custer county on July 31, 1933; and pursuant to a writ of assistance issued in this cause on April 5, 1934, Coffin entered into possession of the premises in suit and has since remained in exclusive possession thereof. In connection with these proceedings, it is to be noted that Coffin was not named a party defendant in the proceedings instituted by Cowles, and neither Cowles nor the Old Line Life Insurance Company were

named as defendants in the proceedings instituted and carried on by Coffin. It is the contention of Coffin that he had no actual knowledge of the pendency of Cowles' proceeding or of the existence of Cowles' decree of foreclosure and sale until after the confirmation of the sale under which he (Coffin) claims title. However, on February 28, 1929, E. B. Cowles caused to be filed in the office of the register of deeds of Custer county, Nebraska, a *lis pendens* which was indexed as E. B. Cowles v. Christie Poole, containing notice of three separate causes of action, but in which as the second cause of action Mary E. DeBusk and ——— DeBusk, first and full name unknown, were named as defendants, and the premises here in suit were described. We assume for the purpose of this opinion, but do not determine, that this *lis pendens* conformed to the statutory requirements as to sufficiency of description of the real estate involved and also as to filing and indexing thereof.

Preliminary to a discussion of the issues on appeal presented by the record, it is to be noted that our revenue act provides that "Taxes on all real property shall, be a first lien thereon from and including the first day of December of the year in which they are levied until the same are paid," etc. Comp. St. 1929, sec. 77-203. See *Mutual Benefit Life Ins. Co. v. Siefken,* 1 Neb. (Unof.) 860, 96 N. W. 603; *Merriam v. Goodlett,* 36 Neb. 384, 54 N. W. 686; *Douglas County v. Shannon,* 125 Neb. 783, 252 N. W. 199.

This court is committed to the view that "The lien for taxes is not satisfied by a statutory sale of the property for the same, nor by the payment of prior or subsequent levies by the purchaser. Such sale only operates to transfer the lien to the purchaser." *City Safe Deposit & Agency Co. v. City of Omaha,* 79 Neb. 446, 112 N. W. 598, 21 L. R. A. n. s. 72.

The sale of real property by the county treasurer to a tax purchaser does not divest the lien of taxes. It merely transfers it to the tax purchaser. It is well settled in this jurisdiction that, even where the certificate of tax sale and the sale are void, the lien of the "legal tax then due and de-

linquent" covered by such sale is transferred to the purchaser. *Roads v. Estabrook,* 35 Neb. 297, 53 N. W. 64; *Grant v. Bartholomew,* 57 Neb. 673, 78 N. W. 314.

The consensus of judicial opinion under statutes similar to our own has been stated as follows: " 'Tax liens,' it is said, 'take priority in the reverse order of other liens. As to all other liens the first in order of time is *prima facie* superior to those of a later date. In the case of tax liens, however, the "last shall be first and the first last." The general and universal rule is that in proceedings *in rem* to enforce the payment of taxes the last tax levied and sought to be enforced is superior and paramount to the lien of all other taxes, claims, or titles.' This rule is well settled." 3 Cooley, Taxation (4th ed.) sec. 1242.

Agreeable to this view, this court in *Medland v. Van Etten,* 75 Neb. 794, 106 N. W. 1022, announced as the principle here applicable, "Taxes levied and assessed for general revenue purposes constitute a lien superior to the lien of a tax sale certificate issued (prior) thereto."

It would seem that the lien possessed by Coffin by virtue of his certificate of tax sale, received by him on November 5, 1928, was clearly senior and superior to the rights and liens possessed by E. B. Cowles.

If it be conceded that this tax lien of H. J. Coffin was, at the date of the institution of the tax foreclosure by Cowles, senior and superior to the rights sought to be enforced by Cowles in that proceeding, do the allegations of the latter's petition form sufficient basis for an effective *lis pendens* as against Coffin? The allegations of this petition, as already summarized herein, relate simply to the purchase by Cowles at a tax sale, the payment of taxes subsequently assessed thereon by him, the ownership of the premises taxed by the DeBusks, and the seniority and priority of the lien for taxes paid to the right and title of fee simple owners thereof. This petition does not name Coffin as a defendant, and in no manner refers to the tax sale certificate which was owned by the latter when the petition was filed.

In *Butler v. Copp,* 5 Neb. (Unof.) 161, 97 N. W. 634 (an action to quiet title), it was contended that the lien of the Farmers Loan & Trust Company on the land in question was cut off and forever barred by a decree of the district court for Holt county foreclosing a certain mortgage thereon given by one Joseph Fuller. In this foreclosure case, service of summons had been made by publication, and there was no appearance therein by the Farmers Loan & Trust Company. The petition contained the following allegation: "Plaintiff alleges that Farmers Loan & Trust Company claimed to have some lien, or interest in said mortgaged premises, they are also made a party defendant." In holding the decree of foreclosure and sale so entered void, so far as affecting the tax lien, this court, by Barnes, C., (later of this court) employed the following language:

"It will be observed that the petition was insufficient, there being no appearance on the part of the Farmers Loan & Trust Company to sustain a decree cutting off its rights. It was neither a proper nor a necessary party, because its lien for taxes on the land itself was paramount and superior to all others. The object of the mortgage foreclosure suit was to sell the property and convey the interest of the mortgagor at the time of making the mortgage which passed under it to the mortgagee. There was no question of priority, and could be none as between the mortgage lien and the lien of the taxes upon the premises. *Stratton v. Reisdorph,* 35 Neb. 314; *White v. Bartlett,* 14 Neb. 320; *Forrer v. Kloke,* 10 Neb. 373.

"In order to support a decree against the Farmers Loan & Trust Company its interests should have been carefully and completely stated in the petition. Such was not the case and, although it was made a party defendant, it was not even called upon to set up its interest in the cause of action. Therefore, the decree could in no way cut off or bar the tax lien."

The principle here involved was adhered to in *Shafer v. Wilsonville Elevator Co.,* 121 Neb. 280, 237 N. W. 155, and in connection therewith it was there announced: "The fil-

ing and recording of a *lis pendens* does not give notice of rights under a cause of action not pleaded."

Query: There being no cause of action of any kind pleaded by Cowles in his petition as against Coffin, does the filing of the *lis pendens* by Cowles give to Coffin notice of the pendency of that proceeding?

Waiving the question of the sufficiency of the petition of Cowles to support the *lis pendens* filed, in the instant case under the admitted facts of the record it is ineffective because we are here dealing with an independent title vested in Coffin, which is wholly unconnected with and not derived from any of the parties to the Cowles proceeding.

On this subject our court has approved the following statement: "Again, the appellant claims title under a decree foreclosing a tax lien. The title conveyed under a tax sale is not derivative, but a new title in the nature of an independent grant by the sovereign authority, and the purchaser takes free from any encumbrances, claims or equities connected with the prior title. *Crum v. Cotting*, 22 Ia. 411. Had proper service been made to give the court jurisdiction in the tax foreclosure proceedings, the deed issued therein would have given appellant perfect title to the land and cut off every prior claim or equity existing against it. The appellant was not concerned with the record title to this land further than to see that the proper parties were made defendants in the tax foreclosure suit." *Topliff v. Richardson*, 76 Neb. 114, 107 N. W. 114. See, also, *Sanford v. Scott*, 105 Neb. 479, 181 N. W. 148.

The nature of the rights here presented for our consideration invokes the application of the following principle: Since the scope of *lis pendens* is determined by its end and purpose, it has no application to independent titles not derived from any parties to the suit or in succession to them. 17 R. C. L. 1027, sec. 24; *Harrod v. Burke*, 76 Kan. 909, 92 Pac. 1128, 123 Am. St. Rep. 179; *Merrill v. Wright*, 65 Neb. 794, 91 N. W. 697, 101 Am. St. Rep. 645; *In the Matter of Smith*, 4 Nev. 254, 97 Am. Dec. 531; *Green v. Rick*, 121 Pa. St. 130, 15 Atl. 497, 6 Am. St. Rep. 760, 2

L. R. A. 48; *Case v. Caddo River Lumber Co.*, 126 Ark. 240, 190 S. W. 440, Ann. Cas. 1918C, 80; 38 C. J. 61.

In 1 Freeman, Judgments (5th ed.) sec. 529, it is stated: "The rule of *lis pendens* has no application to independent titles not derived from any of the parties to the action or from any one in privity with them. * * * So, according to the weight of authority, a person who purchases property involved in litigation at a tax sale is not regarded as a purchaser *pendente lite,* and his title is not affected by the result of the pending litigation, since such a sale is made under the paramount power of the state and on grounds which are adverse to all parties to the litigation and which are not in any way involved in it."

In the note on page 78 of Ann. Cas. 1918C, we find the following: "A sale for taxes being based on grounds which are adverse to all parties to an action involving the title, and which are not in any way involved in the action, the weight of authority is to the effect that the filing of a *lis pendens* does not make the purchaser at the tax sale a purchaser *pendente lite.*"

In *Merrill v. Wright,* 65 Neb. 794, 91 N. W. 697, the question here presented was determined by this court in harmony with the authorities above cited. It is to be remembered in this connection that our *lis pendens* statute, now section 20-531, Comp. St. 1929, was amended by chapter 92, Laws 1887 (approved March 31, 1887). This was passed without the emergency clause, but the legislature enacting the same finally adjourned March 31, 1887. This enactment increased the scope of this statute to substantially as it exists at present, and was in force and effect during the entire period during which the proceedings in the *Merrill* case above referred to were had. In that case it appears that suit was brought in 1892 to foreclose a tax lien. The owners of the property and those in possession under them were duly made parties. Due to time consumed in litigation, a sale of the property under this proceeding was not had until 1902. Meanwhile one Scott had purchased the property for taxes subsequently assessed and afterwards

had taken a tax deed accordingly. Claiming under this deed he thereupon came into possession of the land as owner by virtue thereof. By this time sale of the premises involved had been had under the decree of foreclosure rendered in the action commenced in 1892. In the litigation that followed, the purchaser in the 1892 proceeding contended that his rights were superior to the claims of Scott under his tax deed based on taxes assessed subsequent to those involved in the 1892 foreclosure. He also contended that section 85 Code of Civil Procedure (our *lis pendens* statute) is broader than the general rule, and must constrain the court to extend it so as to include all interest acquired by third persons pending suit, whatever their nature or source. This contention was answered by this court's announcement of the doctrines, viz.: "The purpose of the rule as to *lis pendens* is to prevent third persons, during the pendency of the litigation, from acquiring interests in the land which would preclude the court from granting the relief sought." And, "Hence such rule has no application to independent titles, not derived from any of the parties to the suit nor in succession to them."

In this *Merrill* case it was determined that the rights of Scott, gained by virtue of his tax purchase, were in no manner affected by or through the doctrine of *lis pendens*.

In the instant case the matter involved being an independent title, in effect derived exclusively from the sovereign power, the State, we hold the rights of H. J. Coffin wholly unaffected by the *lis penaens* filed by Cowles and proceedings had by him subsequent to such filing.

Nor can we agree with the determination of the district court that there has been a merger in Coffin of the title derived by him through his tax foreclosure with the fee title as it previously existed. The service of due process upon the owners of the fee simple title to the premises by Coffin at the institution of his suit is not questioned. The land was within the jurisdiction of the court. The confirmation of the sale and the sheriff's deed executed pursuant thereto gave Coffin, not a derivative title, but a new title in the

nature of an independent grant of sovereign authority. The fact that he failed to make the owner of the Cowles decree a party to his proceeding, while operating to limit the conclusiveness of the decree involved so far as cutting off right of redemption of a subsequent encumbrancer, in no manner changed the essential character of the title received by him. So far as these proceedings were valid, the rights conferred were exclusively derived from a single source, viz., from the sovereign power. As a prerequisite to a possible merger, two or more separate rights, liens or titles must coexist in the same individual. Coffin's rights under the record in this case are an independent title derived directly and solely from the sovereign power, the State. He possesses no other. And even where the owner of a tax title subsequently acquired the previous title by quitclaim deed, this court answered the question presented by that situation by the announcement of the doctrine: "No merger of a tax with a title subsequently acquired by quitclaim deed takes place where the evidence shows that the possessor of both titles did not so intend." Sanford v. Scott, 105 Neb. 479, 181 N. W. 148. Therefore, under the facts disclosed by the present record, there can be no possibility of merger.

A situation comparable to that here presented was considered by this court in the case of Merriam v. Goodlett, 36 Neb. 384, 54 N. W. 686. In the Merriam case we announced the principle: "If parties affected (by a tax foreclosure and sale) are not before the court their remedy is an action to redeem. If the court had jurisdiction the decree cannot be treated as void." See, also, Gillian v. McDowall, 66 Neb. 814, 92 N. W. 991; Smith v. Potter, 92 Neb. 39, 137 N. W. 854.

It follows that the trial court erred in the entry of the decree appealed from. The judgment is, therefore, reversed and the cause remanded for further proceedings in harmony with this opinion, with directions that upon application of the parties amended pleadings may be filed.

REVERSED.