## LYDIA MERRIAM, APPELLANT, V. JOHN A. GOODLETT ET AL., APPELLEES.

### FILED MARCH 16, 1893. No. 4850.

1. **Contract to Convey Real Estate:** LACHES: SPECIFIC PERFORMANCE. One A. purchased certain real estate, and in pursuance of the contract entered into possession of the property and made improvements thereon. The contract contained a provision that time should be the essence of the contract. *Held,* That the circumstances of the case were not such as to make time the essence of the contract, and that a failure to perform at the day would not prevent the specific enforcement of the contract.

2. ———: ———: WAIVER. Where time originally is the essence of the contract, and the contracting party intends to insist on the stipulation and to put an end to the contract, he must do no act that can be construed into a waiver of the stipulation.

3. **Tax Lien:** FORECLOSURE: DECREE: TITLE. A tax lien on the land itself takes precedence of all other liens, and a decree foreclosing the same, and a sale thereunder, where all persons affected thereby are before the court, transfers to the purchaser under the decree an absolute title in fee of the land.

4. ———: ———: ———: REDEMPTION. If parties affected are not before the court their remedy is an action to redeem. If the court had jurisdiction the decree cannot be treated as void.

5. **Quieting Title:** EQUITY. A plaintiff filed a petition to remove a cloud from his title caused by an outstanding contract for the sale of the land, and also to remove a cloud caused by a mortgage, which it was alleged was barred by the statute of limitations. *Held,* That to entitle him to affirmative relief he must do equity by paying the amount due on the mortgage; but as the court had dismissed his petition for want of equity, he would not be required to pay the amount due on the barred mortgage.

6. **Mortgage Foreclosure:** LIMITATIONS. An action to foreclose a mortgage is barred in ten years from the time the debt becomes due, or from the date of the last payment or a new promise to pay the same, and under section 17 of the Code the time is not extended by the absence of the defendant from the state.

APPEAL from the district court of Otoe county.  Heard below before CHAPMAN, J.

*C. W. Seymour*, for appellant.

*Edwin F. Warren*, contra.

MAXWELL, CH. J.

This is an action brought by the plaintiff in the district court of Otoe county to have a certain contract for the sale of lots 1, 2, 3, 4, 5, and 6, in block 168, in Nebraska City proper, canceled and held for naught, and to have a mortgage executed by one Boies to Paine & Co., in 1874, declared barred and satisfied, etc., and to quiet and confirm the title in the plaintiff.  The contract under which the Goodletts hold is as follows : "I, S. N. Merriam, am held and firmly bound unto Jennie H. Goodlett in the sum of $1,500, conditioned that I will, time being the essence of this contract, on the first day of September, A. D. 1888, and on the full payment of her promissory note for $100 due on said date, payable to W. D. Merriam, make, execute, and deliver to said Jennie H. Goodlett a warranty deed, except for the taxes accruing after that for the year 1881, for the following described real estate, to-wit : One, two, three, four, five, and six (1, 2, 3, 4, 5, and 6), in block one hundred and sixty-eight, Nebraska City, county of Otoe, state of Nebraska.

"Conditioned also that the said Jennie H. Goodlett, at the same time, execute and deliver to me a mortgage on said premises to secure three promissory notes for three hundred dollars, each bearing date on this day, payable to W. D. Merriam, in which mortgage her husband, John A. Goodlett, shall join, and provided said Jennie H. Goodlett shall insure said property, not less than six hundred dollars, for the benefit of said W. D. Merriam in case of the non-payment of any of the three said promissory notes and in case of loss of houses and premises by fire, said insurance policy

28

to be obtained by the first day of July, 1883. Dated and signed at Nebraska City this 15th day of April, 1880.

"S. N. MERRIAM,
"By W. D. MERRIAM,
"*His Attorney in Fact.*

"In presence of
"G. W. COVELL."

This is duly acknowledged.

There is a second count in the petition for rents and profits.

Paine & Co. answer in effect that Boies executed a mortgage for $1,200 to them in 1874; that no part of the same has been paid; that Boies has been absent from the state nearly all the time since said mortgage became due, and that the same is now due and payable.

Goodlett and wife answer, in effect, that they have paid the interest promptly on said purchase as the same became due, and that such payments were accepted and credited to them by W. D. Merriam. They also allege that W. D. Merriam is the real party in interest in the case, and ask that he be made a plaintiff. They also allege that in 1888 they tendered the whole amount due on said lots to W. D. Merriam and demanded a warranty deed as provided in said contract, but the said Merriam refused to execute the same. They also allege that Paine & Co. claim a lien on the premises by virtue of said mortgage. They also allege that one Mathes did possess a tax lien on said lots, which he has assigned to Merriam.

In reply the plaintiff alleges proceedings in the United States circuit court for the foreclosure of tax liens on the premises and that he purchased the same under the decree.

On the trial of the cause the court held that W. D. Merriam was the real party in interest and was declared the plaintiff; that plaintiff's petition be dismissed; that Paine & Co. have a foreclosure of their mortgage, the amount found due exceeding $5,000; that the amount due from

the Goodletts to W. D. Merriam was $1,000; that the tax lien of Mathes had been assigned to the plaintiff before the commencement of the action; that W. D. Merriam specifically perform the contract with said Goodletts upon payment of $1,000, and convey said premises to her free of incumbrances; that Merriam pay the Paine Company the sum of $5,260, and that said lots be sold according to law to satisfy the same, etc.

It appears from the testimony that in 1878 Thaddeus W. Boies, the then owner of the lots in question, filed a petition in the district court of Otoe county to have the taxes and tax deeds of Selden N. Merriam on the lots in question declared null and void and not a cloud upon his title to the same. This cause, on the petition of Merriam, was removed into the United States circuit court for Nebraska. An answer was filed in that court, and in 1880 the following decree was entered:

"On reading and filing the said report of said Dwight G. Hull, master in chancery of this court, which report bears date the 31st day of May, A. D. 1880, and was in pursuance of an order of the court, heretofore made in this cause, referring it to said master to report the facts and find the law in said cause, from which it appears that the complainant, Thaddeus W. Boies, was the owner and in peaceable possession of lots numbered one, two, three, four, five, and six, in block numbered one hundred and sixty-eight, in Nebraska City, Otoe county, Nebraska; that on the 23d day of February, A. D. 1876, the said lots above described were sold by the then treasurer of Otoe county for the delinquent taxes of 1873, at private sale, by the assignee of defendant Merriam; that the holder and owner of said tax certificate has paid the taxes upon the said lots both prior and subsequent to said date; that from 1869 to 1875 the complainant had abundance of personal property in Otoe county out of which said taxes might have been made; that the tax sale of said real estate was

illegal and void, and that said pretended tax deed is void upon its face; that said respondent, Selden N. Merriam, should be subrogated to the rights of the county, and should be decreed to have a lien upon said real estate for all taxes paid, with twelve per cent interest from the date of such payment, and that there was due from said Thaddeus W. Boies, complainant, to the respondent, Selden N. Merriam, at the date of said report, to-wit, on the 31st day of May, 1880, for said principal and interest by reason of said tax purchase, the sum of nine hundred and two $\frac{53}{100}$ dollars. Whereupon it is ordered, adjudged, and decreed by the court that the exceptions to the said master's report filed herein be and the same are hereby overruled. And on motion of C. W. Seymour, counsel for the complainant, it is ordered, adjudged, and decreed, and this court doth order, adjudge, and decree, and that said report, and all things therein contained, stand ratified and confirmed.

"And it is further ordered, adjudged, and decreed that the said complainant, Thaddeus W. Boies, pay, or cause to be paid, to the respondent, Selden N. Merriam, the amount so reported due as aforesaid, together with ten per cent interest thereon from the date of said report, to-wit, the 31st day of May, A. D. 1880, on or before the 12th day of May, A. D. 1881. And in default thereof, that all and singular the said premises described and mentioned in said master's report made in this cause, to-wit, lots numbered one, two, three, four, five, and six, in block numbered one hundred and sixty-eight, in Nebraska City, Otoe county, state of Nebraska, or so much thereof as may be sufficient to raise the amount due the respondent for said principal and interest in this case, and which may be sold separately without material injury to the parties interested, be sold at public auction, by or under the direction of William Daily."

The court then proceeds to direct the procedure in conducting the sale, and taxed the costs, amounting to $116.45, to Merriam.

In 1881 the lots in question were sold under the decree and purchased by Selden N. Merriam for the sum of $800. The sale was reported to the court and confirmed, and a deed made to the said Merriam for the lots in question. In 1883 Merriam sold the lots in controversy to Mrs. Goodlett. It will be observed that in the contract of purchase time is made the essence of the contract and a failure to pay at the day is declared to be a cause of forfeiture. In equity time is not in general the essence of the contract, and under certain circumstances may be disregarded. In *Lennon v. Napper*, 2 Sch. & Lef. [Ir. Ch. R.], 684, Redesdale, J., says: "The courts, in all cases of contracts for estates of land, have been in the habit of relieving where the party from his own neglect had suffered a lapse of time, and from that, or other circumstance, could not maintain an action to recover damages at law." There are cases where time may be made the essence of a contract—as where a condition precedent, such as payment, is to be performed by a certain time before the vesting of any estate. (*Hatch v. Cobb*, 4 Johns. Ch. [N. Y.], 559; *Kempshall v. Stone*, 5 Id., 193.) So where it was agreed that the vendee should erect a house on the land by a day named, and make the first payment of the purchase price, and he did neither, and it was further agreed that if the vendee should fail to perform any of his covenants at the day that his rights under the contract should cease, it was held that the parties had made time essential. (*Wells v. Smith*, 7 Paige [N. Y.], 22; *Benedict v. Lynch*, 1 Johns. Ch. [N. Y.], 370.) In *Edgerton v. Peckham*, 11 Paige [N. Y.], 352, the contract contained a provision that if the vendee made default in any of his payments that he should forfeit the previous payments. This was held not a bar to specific performance. In *Edgerton v. Peckham, supra*, Gridley, V. C., in an able review of the authorities up to the year 1844, says:

" 1. Time may have become of the essence of the contract by the rise or depreciation of the value of the prem-

ises contracted to be sold. And, therefore, one who has given evidence of the abandonment of the contract, by lying by to see whether it will or will not be a bargain to take the property, will not be relieved, though he may have paid some portion of the purchase money. And gross negligence is evidence of an abandonment which will be a bar to a bill for relief. This doctrine is advanced in and supported by a great variety of cases. (13 Ves., 244; 5 Id., 818, 720; s. c., 4 Id., 667; 4 John., 494; 3 John. Ch., 370.)

"2. Time may be of the essence of the contract, by reason of the nature of the interest in the property which is to be conveyed. Contracts for the purchase of stock are of this description; and the reason assigned is that the daily fluctuations in the price would render a punctual performance of the essence of the contract. (See 4 Ves., 492; 1 Sim. & Stew., 59.) So also in the case of the sale of a reversionary interest, where the vendor may be supposed to be in want of the consideration money, and to whom it is of importance that the money should be paid punctually. (*Newman v. Rogers*, 4 Bro. C. C., 391; *Ormond v. Anderson*, 2 Ball & Beat., 370.) So where there is an agreement to sell at a valuation, to be made within a certain time, by persons who are named. (6 Mad., 26.) So also in a sale of a lease depending on lives. (*Ormond v. Anderson*, 2 Ball & Beat., 370.) There a distinction is taken between such a case and a case of purchase, where time is said to be not of the essence of the contract, as a compensation for the delay may be paid in the interest, etc.

"3. Time may be of the essence of the contract when there is an express stipulation to that effect, and where the contract is executory at the time of the default; no part or no considerable part of the purchase money having been paid. And this is on a very plain principle, to-wit, that the performance, by the vendee, is a condition precedent to the performance of the contract by the vendor. It is believed that most of the modern cases which have been sup-

posed to establish the rule that a mere naked default will *ipso facto* work a forfeiture, not relievable *in* equity, will be found to fall within this class of cases, or the one last above mentioned. Such was the case of *Wells v. Smith*, 2 Edw. Ch. Rep., 78. There no part of the consideration money had been paid, though some money had been expended on the premises."

He also cites the cases where time has been the essence of the contract, but there has been a waiver by accepting payment while the vendee was in default. A court of equity looks to the substance of a contract, and when that is fulfilled and the general intention of the parties carried into effect, the court will relieve from any forfeiture or penalty inserted for the purpose of enforcing the contract. (Jeremy, Eq. Juris., 470; Fonbl. Eq. (4th Am. ed.), 130; *Edgerton v. Peckham*, 11 Paige [N. Y.], 358.) In the case at bar the substance of the contract was a sale of the lots in question to the Goodletts for a specified price with annual interest. The Goodletts, in pursuance of the contract, entered into possession and have retained the possession, paying the taxes and expending considerable sums in improvements thereon, etc. The interest has been paid or tendered up to the time of bringing this suit. There is no circumstance, therefore, that would make time the essence of the contract and thus rob the purchaser of his estate. But even if time was the essence of the contract, it has been waived by the acceptance of the interest while the Goodletts were in default. They are, therefore, entitled upon payment of the purchase price to specific performance of the contract.

It will be observed that Merriam derives his title to the lots in question through a decree of the United States circuit court foreclosing tax liens, and a sale thereunder, which was duly confirmed and a deed made to the purchaser. It will be observed also that many of these taxes antedate the mortgage to Paine & Co. Taxes assessed upon real estate constitute a lien thereon from the first day of April in each

year.   A lien for taxes takes precedence of all other liens where the tax is assessed upon the land itself and not upon any particular interest therein (*Post v. Leet,* 8 Paige [N. Y.], 337; *Kern v. Towsley,* 45 Barb. [N. Y.], 150; *Dowdney v. New York,* 54 N. Y., 186; *Cochran v. Guild,* 106 Mass., 29; *Parker v. Baxter,* 2 Gray [Mass.], 185; Cooley, Taxation, 306; *D' Gette v. Sheldon,* 27 Neb., 829); and a change in the ownership will not affect the lien, as the law takes no notice of such change (*Oldhams v. Jones,* 5 B. Mon. [Ky.], 458; *Covington v. Boyle,* 6 Bush [Ky.], 204; Cooley, Taxation, 306).   The foreclosure, therefore, extinguished the mortgage lien, even if it is not barred by the statute of limitations.   As the mortgagee was not a party, if the mortgage lien is not barred, no doubt he could proceed in an action to redeem by setting up the necessary facts to entitle him to such relief.   He must bring his action within the statutory period, however. An attempt was made to show that Boies was a non-resident of the state, and the statute of limitations did not run against him.   There was some proof introduced tending to show that he had previously resided at Seward; that he had removed from there to Colorado or Kansas, but his family was still residing in Seward county.   There is also proof that he was fearful that service of summons would be made upon him in Lancaster or Seward counties.   Taking the proof all together, and it fails to show that Boies has been absent from this state for five years since the mortgage in question became due.   Neither is it material when it is sought to enforce the mortgage against the land.   The proviso to section 17 of the Code expressly excepts cases of foreclosure of real estate mortgages.   Such foreclosure must be brought within ten years from the time the debt becomes due, or there is part payment or a new promise, or the action will be barred.   In any view of the case, therefore, an action to foreclose the mortgage is barred. The plaintiff, however, by seeking to have the cloud re-

moved from his title and to have it confirmed in him sub-
jects himself to the equity rule that he that seeks equity
must do equity.    The rule, however, is imposed as a con-
dition of granting relief.    If relief is denied, the rule
will not be applied.    For reasons which will presently be
stated the judgment dismissing the plaintiff's action must
be affirmed and the plaintiff denied any relief.    He will
not be required, therefore, to assume the mortgage in ques-
tion.    The judgment is in form personal, although prob-
ably not so intended.    In a case of this kind the purchaser
under the tax liens did not assume the mortgage debt and
he is not personally liable therefor.    The remedy, if one
exist, is confined to the land itself.    The Goodletts, within
sixty days, may pay to the clerk of this court the sum of
$1,000, with interest from the date of the decree in the
court below.    Upon the payment of which the plaintiff
will be required to execute a deed as provided in the con-
tract, and the money in question will not be delivered to
him until the deed is made.    The judgment will be modi-
fied to conform to this opinion.

JUDGMENT ACCORDINGLY.

THE other judges concur.