WILLIAM F. SMITH, APPELLEE, v. DAVID G. POTTER ET AL., APPELLEES; WALTER V. HOAGLAND, APPELLANT.*

FILED SEPTEMBER 28, 1912.     No. 16,314.

1. **Taxation: FORECLOSURE OF LIEN: SALE: RIGHT OF REDEMPTION.** In a tax foreclosure proceeding by a county to recover delinquent taxes on the land without making a prior administrative sale, where service is obtained by publication and the premises are sold under the decree of foreclosure, the purchaser at the foreclosure sale buys subject to the right of one having a valid lien upon the premises to redeem from such sale, and the party claiming the lien cannot be barred without a hearing, if he answers setting up his defense and demands such hearing.

* Opinion modified. See opinion, p. 63, *post.*

2. ———:· ———:· PUBLICATION OF NOTICE. Proof of publication of notice for constructive service re-examined, and, as a preponderance of the evidence tends to show that the notice was published for the time required by statute, the former opinion is modified to correspond with this view.

REHEARING of case reported in 90 Neb. 298. *Former opinion modified, and judgment of district court reversed.*

HAMER, J.

This is an appeal from a judgment of the district court for Lincoln county quieting title in the plaintiff to a tract of land in that county. The plaintiff's title is derived by a sheriff's deed which was issued in a tax foreclosure suit brought by Lincoln county against David G. Potter and his wife and others. This case was before this court at a prior term. See 90 Neb. 298. For a more complete statement of the facts in the case we refer to the opinion heretofore published. The defendant in the court below, David G. Potter, received a patent to the land in controversy in 1887. Afterwards, in 1892, he executed and delivered a note and mortgage to A. D. Buckworth to secure the payment of a note for $389. This note was indorsed to the North Platte National Bank, of which Buckworth was president. That bank became insolvent, and one Doolittle, who was appointed the receiver of the bank, sold the note and mortgage as such receiver. The defendant Hoagland claims to own this note and mortgage and a decree of foreclosure based upon the same, and he now claims the right to redeem from the tax lien because he owns this note and mortgage and the decree mentioned, and because the tax foreclosure proceedings upon which the plaintiff's title to the land depends are invalid. He filed an answer and a cross-petition. He claims in the answer and cross-petition the right to redeem. Lincoln county obtained a decree of foreclosure for the delinquent taxes on the land without making a prior administrative sale. Service was had by publication and the land was sold to satisfy the decree. The land was purchased at sheriff's sale by the defendant

Wilcox in 1902, and the plaintiff, Smith, receives his title through Wilcox. The plaintiff Smith denies the ownership of the decree by Hoagland, and alleges that the receiver abandoned that indebtedness.

It is claimed that Potter and his wife executed and delivered to the North Platte National Bank renewals of the note executed and delivered to Buckworth. The last of these renewal notes is claimed to have been executed in January, 1894. It is claimed that the receiver of the bank, by virtue of an order of the comptroller of the currency, advertised all of the assets of the bank remaining in his hands to be disposed of, and that he held the sale on or about the 1st day of January, 1900; that on or about the 18th day of January, 1900, he offered the notes and indebtedness secured by the mortgage and covered by the decree for sale at public auction and sold the same to one A. H. Davis, and that he delivered the notes to Davis. There was an affidavit for service by publication in the tax foreclosure proceedings. It is claimed that no valid service by publication could be had upon Potter and his wife because of the fact that they were all the time residents of the state of Nebraska and that the affidavit for service by publication was untrue. Buckworth was a resident of Lincoln county until he died in the year 1894, or thereabouts. In the tax foreclosure proceedings it is alleged that no personal service of summons was had upon Potter and his wife and upon Buckworth. This court reversed the judgment of the district court quieting title in Smith. The appellees Wilcox, Dikeman and Smith have filed a motion to vacate the judgment of reversal entered by this court, and the question is whether the judgment of this court reversing the judgment of the court below shall stand or whether a new judgment shall be rendered.

This court bases its finding that the appellant Hoagland is the owner of the note and mortgage in controversy on the opinion in the case of *McCabe v. Reed,* 88 Neb. 457. In the former opinion this court quotes from the opinion

in *McCabe v. Reed*, and say: "If the defendant in an action to cancel a mortgage produces the notes secured thereby, and it appears that he has controlled and had undisputed possession of the instruments for many years under a claim of title thereto, these facts will sustain a finding that he is the owner thereof, notwithstanding they are indorsed payable to the order of a third person." This court then ventures the opinion that the testimony of the witness Davis is not sufficient to overcome Hoagland's testimony, supported and corroborated as Hoagland's testimony was by his possession and production of the papers. As Hoagland has no rights in the premises unless he is the owner of the notes and mortgage, that is one of the first things to determine. This court said in *McCabe v. Reed:* "The delivery of a negotiable promissory note indorsed to the order of a third person will not in itself transfer title to the note (*Gaylord v. Nebraska Savings & Exchange Bank*, 54 Neb. 104), but an equitable assignment will result from the sale and delivery of the note without an indorsement, and the equitable owner may maintain an action thereon in his own name (*Greeley State Bank v. Line*, 50 Neb. 434). And the possession of an unindorsed negotiable promissory note by some person other than the payee or indorsee may sustain a finding that the equitable title followed the possession. *Cather v. Damerell*, 5 Neb. (Unof.) 175." This court further said in that case that the original note and mortgage were produced in the tax foreclosure case by the intervener, and that they had remained in his custody for more than six years, and that no other person asserted title or ownership to the same, and that *prima facie* there was proof of title in the intervener in the tax case. *Sanford v. Litchenberger*, 62 Neb. 501. It would therefore seem from the evidence that Hoagland should be treated as the owner of the note, mortgage and decree.

It is next claimed that the publication was insufficient. The publication was in a semi-weekly newspaper issued on Tuesdays and Fridays of each week. The first publication

seems to have been on the 28th of August, 1900, and the next on the 31st of August; that would make one week. The succeeding publications are on September 4 and 7, September 11 and 14, and September 18 and 21; the last making the fourth week. It would therefore seem that this objection is not well taken. In the former opinion it was held that the court acquired no jurisdiction because the notice in the tax foreclosure proceedings was not published the required length of time. The end of the four weeks was the 22d of September, 1900. The notice published required the defendants to answer five days before that time. In other words, when the service was complete the time within which defendants were to answer had expired five days before. If it shall be said that the time expired with the last publication, then the defendants were required to answer four days before that time, to wit, on the 17th of September, 1900. In conclusion, touching this matter, the answer day arrived when there had been publication for only three weeks. Section 79 of the code provides that the notice must be made four consecutive weeks, and, among other things, that it must "notify the person or persons thus to be served, when they are required to answer." Of course, this is not done in this case because the time had expired when the answer was to be made according to the language of the notice before the service was complete. Because of this defect in the notice and the time of its publication, we may well doubt whether jurisdiction was acquired, but we do not decide that question, because, while it is apparent by an examination of the case, the question is not raised or discussed by counsel, and we do not have the benefit of their research and argument, and without this no appellate court should determine the question shown by the record.

The next proposition is that the affidavit for publication states that the defendants are nonresidents of the state of Nebraska and service of summons cannot be had on them or either of them. It is said that this is insufficient, and it is argued that the affidavit should allege that service

cannot be made upon them within this state. It is claimed that Buckworth was a resident of Lincoln county until his death. It is claimed that the Potters have always been residents of the state of Nebraska and that service of summons could be made upon them in this state. If that is .true, the tax foreclosure is without jurisdiction.

It is argued that the rule should be applied in this case which is said to have been established in *Britton v. Larson,* 23 Neb. 806. That was in an action of ejectment. There was a trial in the district court resulting in a verdict and judgment in favor of the defendant. The record in that case showed that in April, 1875, one Harry Brownson was the owner of the real estate in question; that on March 8, 1871, he and his wife executed and delivered to the First National Bank of Omaha a mortgage on the real estate. On the 16th of April, 1875, a summons was issued to the sheriff of Wayne county directing him and notifying the said Harry Brownson and Jennie Brownson of the institution of an action to foreclose the mortgage. A summons was returned on the day of its issue not served, the defendants not being found in Wayne county. On the next day an affidavit was filed showing the nonresidence of the Brownsons. Service was had by publication. August 24, 1874, a decree of foreclosure was rendered, and the land was sold under the order of the court, and September 20, 1876, the same was confirmed and the sheriff directed to execute the usual deed to the purchaser. On the 18th of February, 1885, Brownson and wife conveyed the land in question by a quitclaim deed to the plaintiff. The plaintiff insisted that the district court was without jurisdiction to render the decree because there was a defect in the affidavit showing the nonresidence of the Brownsons. The affidavit did not describe the property mortgaged. There was no attempted description of it. It was not described by numbers; nor was it alleged to be in Wayne county.

It was also objected that the affidavit did not show that the Brownsons could not be served with summons within the state, and therefore that the affidavit did not comply

with the requirements of sections 77 and 78 of the code. Section 78 of the code provided that, before service could be made by publication, an affidavit should be filed alleging that service could not be made on the defendants in the state. Section 78 of the code, as it was then and as it is now, reads: "Before service can be made by publication, an affidavit must be filed, that service of a summons cannot be made within this state on the defendant or defendants to be served by publication, and that the case is one of those mentioned in the preceding section. When such affidavit is filed the party may proceed to make service by publication." In *Britton v. Larson, supra,* there was cited *Carey v. Reeves,* 32 Kan. 718, to the effect that district courts are courts of general jurisdiction and presumed to have jurisdiction to render any order which they do in fact make. In its widest latitude this doctrine would not require an affidavit to be made. All the court would have to do would be to go ahead and then say: "It will be presumed that we have not made an order unless we had jurisdiction to make it." There was a motion to amend the proof of service in the Kansas case. The amended affidavit is not set out in the opinion. Perhaps it is only fair to the Kansas court that the amended affidavit should be set out before any criticism is attempted.

The affidavit for publication in the instant tax foreclosure case sets up that H. S. Ridgley is the attorney for the county of Lincoln, the plaintiff in the action, and that on the 25th of June, 1900, the plaintiff filed its petition in the district court for Lincoln county, Nebraska, against David G. Potter, ——— Potter, his wife, first name unknown, Central Nebraska Loan & Trust Company, A. D. Buckworth, first name unknown, J. I. Case Threshing Machine Company, and John Doe, true name unknown, defendants; that the object and prayer are to foreclose the tax liens mentioned in said cause of action; that "the plaintiff seeks to foreclose a tax lien upon the southeast quarter of section 24, in township 15 north, of range 33 west of the sixth principal meridian, in said county, and there is now

due on said tax liens the sum of $71.26. That the defendants, David G. Potter, ——— Potter, his wife, first name unknown, Central Nebraska Loan & Trust Company, A. D. Buckworth, first name unknown, J. I. Case Threshing Machine Company, and John Doe, true name unknown, are nonresidents of the state of Nebraska, and service of summons cannot be had on them or either of them. (Signed) H. S. Ridgley." The affidavit purports to have been signed on the 7th of August, 1900, before the deputy clerk of the district court. It will be noticed that the Potters, the Central Nebraska Loan & Trust Company, A. D. Buckworth, the J. I. Case Threshing Machine Company and John Doe are alleged to be nonresidents of the state of Nebraska. It is also alleged that service of summons cannot be had on them or either of them. This is a general statement. It is not alleged, as section 78 of the code provides, "that service of a summons cannot be made within this state."

It will also be seen that there is no description in the notice of the tax liens to be foreclosed. It does not appear what years they are for, nor the amount of each. There is a statement of the aggregate. Section 79 of the code provided that the notice must contain a "summary statement of the object and prayer of the petition." In *Scarborough v. Myrick,* 47 Neb. 794, it was stated in the seventh paragraph of the syllabus: "Plaintiff's cause of action is not required to be set forth in an affidavit for service by publication. It is sufficient if such affidavit states that the defendant is a nonresident of this state, and that service of summons cannot be had upon him therein, and facts showing the action to be one of those mentioned in section 77 of the code, in which constructive service is authorized." In the body of the opinion in that case it was said: "It was not necessary that the affidavit should disclose plaintiff's title to the property in controversy. He was not required to state his cause of action in the affidavit, but in his petition. *Grebe v. Jones.* 15 Neb. 312. The affidavit shows that the nature or char-

acter of the suit is one in which the statute authorizes service by publication to be had, and that is sufficient so far as that point is concerned. *Fouts v. Mann*, 15 Neb. 172; *Taylor v. Coots*, 32 Neb. 30."

The petition filed to foreclose the alleged liens is brought by the county of Lincoln against the defendants above named. It alleges taxes against the land for the years 1892 to 1898, inclusive; that the taxes for each year became delinquent in each of the years following; that the premises described were advertised and offered for sale, and returned not sold for want of bidders. The item of tax for each year is given. It is alleged of the defendant Potter that David G. Potter claims to be the owner of the premises, and that ―――― Potter is his wife; that the defendant, the Central Nebraska Loan & Trust Company, claims an interest in the premises by virtue of a mortgage lien; that A. D. Buckworth claims an interest in the premises by virtue of a mortgage lien; that the defendant, the J. I. Case Threshing Machine Company, claims an interest in the premises by virtue of a mortgage lien. It is claimed that the interest of the defendants is inferior to the lien of the plaintiff by virtue of the assessment and levy of the taxes. The prayer is that an accounting be had, and the amount due the plaintiff on account of the taxes, interest and penalties be decreed a first lien upon the premises; that the defendants and all persons, except the plaintiff, be fore-·: ·d and barred from all right, title and interest in and to the premises; that the premises be sold under a decree of the court and the proceeds applied toward the payment of taxes, interest, penalties and costs of the action; that, upon the confirmation of the sale, the sheriff be ordered to make the purchaser of said premises a good and sufficient deed, and that he put the purchaser in possession. The decree seems to have been rendered on the 2d of December, 1901. The assignment of Milton Doolittle as receiver of the North Platte National Bank to A. H. Davis seems to have been on the 8th of January, 1900.

On the 28th of March, 1908, David G. Potter and Lydia

A. Potter, defendants in the original tax foreclosure case, entered their special appearances in the instant case in the district court for Lincoln county, and allege that they appear for the purpose of objecting to the jurisdiction of the district court for Lincoln county over them, for the reason that no service of a summons had been served upon them in this action; that no attempt to serve any summons upon these defendants in this action was made, except by publishing notices in the North Platte Telegraph during the months of December, 1906, and January, 1907, as shown by the proof of publication on file; that at the time of the commencement of this action, and ever since said date, these defendants have been and are residents of Dawes county, in the state of Nebraska, and at no time since the commencement of this action have these defendants been nonresidents of the state of Nebraska. In support of this, David G. Potter files his affidavit alleging that he and his wife, Lydia A. Potter, are residents of Dawes county, where they have been residing near the town of Crawford; that no service of summons had been made upon them.

On the trial of the instant case before the Honorable W. H. Westover, sitting as judge of the district court, there was a finding that no service of summons was had in this action upon defendants David G. Potter and Lydia A. Potter, and "that special appearances of said David G. Potter and Lydia A. Potter were sustained by the court, and this action was and has been dismissed" as to the said David G. Potter and Lydia A. Potter. The court further finds that the Central Nebraska Loan & Trust Company and the J. I. Case Threshing Machine Company have been served with processes upon plaintiff's petition by publication, and the court further finds that the Central Nebraska Loan & Trust Company is a corporation, organized under the laws of the state of Nebraska, and that service upon said defendant by publication was and is invalid. A. D. Buckworth is shown by the evidence to have been a resident of Lincoln county, Nebraska, until he died.

Hoagland testified that he and Davis did the bidding, and that he and Hoagland were to divide. Hoagland testifies: "In the settlement between Davis and I about that time, Davis turned over to me all of the Potter papers, notes and mortgage and assignment which he had procured, being the assignment which is offered in evidence here, the assignment of mortgage and notes which were offered in evidence, together with another note that has not been offered in evidence." He further testified that Davis paid Doolittle, and then that he and Davis adjusted matters between them, and that Davis paid him (Hoagland) the difference in cash. He goes into the details with respect to what they said. "Q. Can you give the date of this settlement between you and Davis? A. Davis paid me the cash on January 8, 1900. He paid me the difference in cash. I am satisfied it was some time after that when we made our complete settlement and divided up the papers." He then testifies that the Potter papers have since that time been in his safe and in his possession. "Q. State if you made an examination as to service of notice of publication thereof in the case of Lincoln County against Potter *et al.* that is involved in this action. If so, when? A. Immediately after I saw the notice in the paper, I then examined the files of the court proceedings here in this office. Then, after investigating the case of the county against Potter, the tax case, I went to the office of the North Platte Telegraph. * * * I called for the files of the paper for that year. Mr. Kelly was not present, but his clerk, Miss Brown, assisted me in looking through the files. We found the files in the same condition then as they were in today when they were examined here in court. Q. That is, the same condition as to lead pencil marks and erasures? A. Yes, sir; exactly. I never examined the files of the paper for this case prior to that time, and never saw them after that time until I was preparing here for this trial in this case, when I went to Mr. Kelly and called his attention to it." He then states that was some time last fall. "Q. Do you

know what it was that you gave Davis for this asset—this note and mortgage? A. Not for this particular one; we divided up all of them, and this one came to me. Q. Do you know what you gave him at that time? A. I do not remember.".

Hoagland testifies to the details concerning the property that he turned over to Davis. "Q. I asked you what it was you gave Davis for the property you had bid in? A. C. O. Davis asset, $3.25; O. E. and W. C. Elder asset, $80; S. E. 18-10-30. * * * Q. Tell me what Davis turned over to you that he bid in? A. The only memorandum I have here is the D. G. Potter property." He then testifies that one evening at home he saw in the North Platte paper William Smith against Potter, describing this land, and that he said he believed he was interested in the land, and the next morning he went down and investigated. He found the notes and mortgage and assignment in his safe. He was unable to tell why he did not get an assignment from Davis, but thought he had overlooked it. "Q. You did not get any assignment of the decree? A. Not unless the assignment of these papers carried it. Q. As a matter of fact you and Davis had no talk about the decree, did you, when you made this transfer? * * * As a matter of fact you didn't know then that this was in decree at that time? A. I would not say that I knew it was in decree at that time, we bought the notes. Q. You would not say; you have no recollection about it now? A. No; I did investigate some of the assets of the bank prior to that time, but whether or not I learned this was in decree, I don't know."

He then testifies that he discovered the matter was in decree before he saw the notice in the newspaper of Smith against Potter. He seems to have at once written a letter to Mr. Davis immediately after the lawsuit was commenced. As soon as the case was started he wrote Davis for an assignment of the decree. He wrote Davis that he (Davis) had neglected in the transfer of the papers the assignment of the mortgage. "Q. From the time that

you ascertained that there was a decree in this case, which you say you saw within six months from the time you bought these securities, what did you do toward enforc- ing or collecting it, up to the time you filed your cross- petition in this case?   A. I took no steps in court, but I did write a number of letters trying to find out where Mr. Potter was.   I wrote some letters which were re- turned." It seems that Hoagland sent an assignment to Davis to be executed by him, and that Davis refused to execute it.   Hoagland so testifies.

Davis, when called as a witness, controverted Hoag- land's testimony, but his testimony is evasive and un- satisfactory.   "Q. Was there ever any talk between you and him by which he was to have these instruments?   A. No; after Mr. Hoagland and I had our settlement, I got these papers after that, I was supposed to have got them. Q. What are the facts as to whether or not you and Hoag- land had some kind of an arrangement or agreement at the receiver's sale?"   To this question the witness testi- fied that they agreed between themselves that when one bid on a piece of property the other would not, and that they were to divide the assets, and that Davis was to have a half section of land to be bid in for him by Hoagland, and that Hoagland was to have the Lewis mortgage for whatever it could be bid in at.   Davis says: "We bought a number of assets, and among them were these two which I mentioned.   We did not get a settlement between us at the time.   We had Mr. Doolittle make a memorandum on his sale book of what Hoagland bought and what I bought and we were afterwards, when we got together, to put them down and see what each one was to have and to let him (Doolittle) know, so he could put them on his book and make the assignments regular.   I think it was a week probably afterwards that Hoagland and I agreed on set- tlement of the assets, and we settled.   Hoagland took them down and made a list of them, of what I was to have and what he was to have.   I went to Doolittle's office across the street, and Hoagland wrote Doolittle what

assets was coming to me and what assets were to go to
W. V. Hoagland, and he instructed him to make the as-
signments in accordance with the statement, and Doolittle
put them on his book that way.    We figured up the
amount, and I think I paid Hoagland, and Hoagland paid
Doolittle, if I remember right.    Among the assets which
came to me was the land over south, with a number of
others, among which was this assignment of the Potter
mortgage."    Davis then testifies that at the time he and
Hoagland went to see Doolittle they had not determined
how the property was to be divided, but he says that
Doolittle assigned them and turned them over.    Davis
admits that Hoagland wrote him the letters which Hoag-
land says he wrote.    Davis says he does not remember
anything about the decree until about the time he re-
ceived Hoagland's letter.

On cross-examination, Davis admits that he got a letter
from Hoagland after he moved to Grand Junction.    "Q.
How did it come that you sent this to Mr. Wilcox as soon
as you received this from me?    A. I do not recollect ever
having assigned to you this Potter matter at all, and I
did not know what I had done with that or what become
of it.    I made a hunt through a bundle of those old assets,
with a number of others, to see if I had any Potter assets,
and I found I did not have.    I immediately wrote Mr.
Wilcox and told him to investigate and see what there
was in it, that it was probably of value to you; if it be-
longed to you, you were entitled to it, and, if it belonged
to me, I wanted it.    Q. Have you ever made any demand
upon me for it?    A. No, sir.    Q. Did you get the list
from the receiver at the time you bought these assets, a
list of what you had bought?    A. No; I made a memo-
randum of what I bought and what you bought.    Q.
What you bought?    A. What we bought together."    He
then testifies that he does not know what he did with the
list.    He does not know whether the receiver gave him a
list.    Davis in his testimony corroborates the testimony
of Hoagland as to the material things.    He corroborates

Hoagland as to the fact that they acted together, and that they had a division, and that Hoagland took the papers. There is an attempted denial of Hoagland's rights based upon the fact that there was an assignment of the decree.

We think the evidence fully establishes the fact that Hoagland is the owner of the note, mortgage and decree, and that he has been the owner of the same ever since the sale by Doolittle, the receiver of the bank. As Hoagland was not made a party defendant, or any one representing him, and the owner of the note, mortgage and decree was not brought into court at any time, it would seem that the claim in question is not barred, unless the statutes and decisions affecting the matter created such bar. That every man is entitled to his day in court expresses a primary principle concerning the disposition of property and the enforcement and guaranty of property rights.

Sections 1-11, laws 1875, p. 107, entitled "An act to provide a method of foreclosing tax liens upon real estate in certain cases," furnish a method of foreclosure under which the premises in this case were sold. Section 1 provides that the tax lien upon real property may be enforced "by an action in the nature of a foreclosure of a mortgage." Section 3 provides that all petitions for the foreclosure of such tax liens "shall be filed in the district court in chancery, where the lands are situated." Section 4 provides: "Service of process in causes instituted under this chapter, shall be the same as provided by law in similar causes in the district courts, and where the *owner of the land is not known,* the action may be brought *against the land itself,* but in such cases the service must be as in the case of a nonresident." Section 9 provides: "All lands sold by the sheriff by virtue of this act shall be appraised, advertised and sold as upon execution, and the title conferred by his deed shall be entitled to all the presumptions of any judicial sale." Section 4 of the act contemplates proceedings the same as provided by law in similar causes in the district courts, and, where the owner

of the land *is not known*, then that the action may be brought against the *land itself*, but in such cases the service must be as in the case of a nonresident. The purpose in any event is to give notice. The proceedings are clearly *in personam*, unless brought against the land itself. In this case the parties interested were sought to be brought into court, but were not. This was *not a case against the land*. It was directed against the parties interested. Section 6 of the act makes the deed a bar where the land is made a defendant in the suit, but that is not this case. The Potters, who made the mortgage, were not brought into court; Buckworth, to whom the mortgage was made, was not brought into court; neither was the North Platte National Bank to which he assigned it; neither was the receiver of the bank brought into court. It is claimed that there is no necessity for bringing these parties before the court. The statute itself would seem to dispose of the matter. The action to foreclose a tax lien is to be "in the nature of a foreclosure of, a mortgage." In the case under consideration there was no allegation that the *owner of the land was unknown*. The action was fairly a personal action. There was no order, as the act provides, to have the land substituted as a defendant. No attempt of any kind was made to get service against the land.

In *Carman v. Harris,* 61 Neb. 635, the court said: "The decree, of course, could only bind the parties to the suit, and those claiming under them, and could not affect third parties." In *Alexander v. Thacker,* 30 Neb. 614, the court said: "In a suit to foreclose a lien for taxes, all parties having an interest in the real estate are proper parties, and the person holding the equity of redemption is an indispensable party." In *Carson v. Dundas,* 39 Neb. 503, the fourth paragraph of the syllabus reads: "A sale to satisfy tax liens, when the action was brought *in personam* and not against the land itself, passes only the title of the parties to the action and their privies in estate. It does not divest the title of strangers." In *Merriam v. Goodlett,* 36 Neb. 384, the court said: "As

the mortgagee was not a party, if the mortgage lien is not barred, no doubt he could proceed in an action to redeem by setting up the necessary facts to entitle him to such relief."

In *Selby v. Pueppka*, 73 Neb. 179, there was a suit in equity brought by the grantee of the original owner to redeem land sold for taxes at a judicial sale. There was a general demurrer to the plaintiff's petition, which was sustained by the court. The plaintiff elected not to plead further, and from a judgment of dismissal brought error to this court. There had been a sale for taxes by the sheriff of Rock county upon a decree of foreclosure entered at a suit of Rock county as plaintiff. There had been no adminstrative sale for taxes. Rock county undertook to foreclose a tax lien without resorting to a sale. It procured the premises to be sold to the defendant's grantor and the sale was confirmed, and a sheriff's deed was issued upon the order of confirmation. Afterwards this title was conveyed to the defendant. The owner at the time of the assessment of the taxes afterwards conveyed to the plaintiff, and the plaintiff brought his action to redeem from the taxes, alleging that the foreclosure proceedings were all void, for the reason that the petition in that action showed that there had been no prior sale of the premises for taxes. The petition also urged that the constitution of the state allowed a redemption within two years from any tax sale. In favor of the alleged judgment, it was urged that the fact that a petition was demurrable did not make the decree of a competent court subject to collateral attack where the parties were before it and the subject matter was one of which the court had cognizance. To the claim of the plaintiff that two years' time for redemption from a sale for taxes had not run, it was replied that the decree of confirmation was as conclusive as to the sale as that of foreclosure is to the lien and the right to sell under it. It was urged that to permit a redemption was to allow a collateral attack upon the decree of confirmation. Com-

missioner HASTINGS, speaking for this court, said: "So far as plaintiff's first contention is concerned it would seem that defendant's claim is good." It should be said on behalf of this court, however, that it reversed the decree of the district.court upon the ground that the second contention of the plaintiff, that he had a right of redemption, was good. The court said: "The terms of the constitution are very sweeping. Art. IX, sec. 3. A right of redemption is given from all sales of real estate for the nonpayment of taxes for two years after the sale. This provision has been held to be self-executing. *Lincoln Street R. Co. v. City of Lincoln*, 61 Neb. 109. It has also been declared to apply to judicial sales as well as administrative sales. *Logan County v. Carnahan*, 66 Neb. 685." The court then said: "The confirmation applied only to the regularity of the proceeding. It held the sale valid and regular, but in no way adjudicated the right of redemption from it. The latter existed by virtue of a self-executing constitutional provision independent of the court."

Judge DUFFIE, as commissioner of this court, delivered the opinion in *Clifford v. Thun*, 74 Neb. 831. In speaking of *Selby v. Pueppka, supra*, he says: "In that case it was urged that the confirmation of the sale and the making of a deed cut off the owner's right to redeem," but he does not say that was the decision. As we have just seen, it was not. In that case Clifford, who was the plaintiff in error, filed his petition for the foreclosure of a mortgage on 80 acres of land made to the Globe Investment Company by Henry Thun and his wife. The petition was filed February 21, 1903, and September 5, 1903, he filed an amended petition, in which he alleged that on August 6, 1901, the land covered by his mortgage was sold for the delinquent taxes due thereon for the years 1895-1900, both inclusive; that one Skillman was the purchaser at said sale, and that Skillman on August 21, 1901, commenced an action to foreclose his tax certificate, making various parties defendants; that a decree was entered fore-

closing tax liens held by Skillman and one Toy, and that on December 24, 1901, all the real estate was sold to satisfy the decree, and that Thun became the purchaser; that the plaintiff was the owner and holder of a mortgage made by Thun to the Globe Investment Company covering the premises in controversy, and that the same was due, and he prayed to be allowed to redeem the premises from the tax sale foreclosure, and for the foreclosure of his mortgage. Henry Thun demurred to this amended petition, alleging it did not state facts sufficient to constitute a cause of action. The right to redeem alleged in the amended petition was in addition to the matter contained in the original petition. It was urged that the plaintiff owning the mortgage at the time of the foreclosure of the tax certificate was not made a party defendant and that his right of redemption was not extinguished by the decree. Judge DUFFIE then says: "The plaintiff by his bill is seeking to enforce a *right* of redemption as distinguished from an *equity* of redemption, a right based upon a provision of the constitution and the statutes of the state, and it is by these provisions that his right is to be measured and determined, and not by the decree entered by the district court in the tax foreclosure action, which, as before stated, did not attempt to determine or cut off the privilege awarded him by the laws of the state to redeem from the tax sale within two years from its date. The difficulty under which he labors is that this right was not asserted within the time limited, and his right to redeem has been barred by lapse of time, not by the decree, but by statute." The judgment of the court below was affirmed.

An examination of these cases show that there was no discussion of the act in question. The trouble about these cases is that the lawyers and judges neglected to hunt up the statute and discuss it. More than that, the court attempted to and did bar the rights of the plaintiff without an examination of the facts of the case. It is rather difficult to understand why he would refuse to consider the foreclosure of the mortgage.

Commissioners DUFFIE and HASTINGS seem to hold in the cases above mentioned that, because one who is a party to the foreclosure may still redeem at any time within two years after the sale under the foreclosure, therefore that when he is not a party he is also barred. In *Hall v. Moore*, 75 Neb. 693, there is no discussion of the statute under consideration. That was an action to foreclose certain tax liens. The appellant, Maud M. Keck, procured an assignment to herself of the mortgage in the case. In disposing of this case Commissioner AMES said: "In the opinion of the writer there is much reason to doubt whether a mortgagee is even a proper party to such a suit, but he is certainly not a necessary one." The question was not before the court in any way and what he said was a mere dictum. To do what the learned commissioner seems to have contemplated would be a clear violation of section 3, art. IX, and sec. 13, art. I of the constitution. It would also be in violation of the act. "The suit authorized by statute is one not merely to establish the right to redeem from a tax sale, but to effect a redemption." 2 Desty, Taxation, p. 891. "In any judicial proceeding the court which assumes to act must have that authority of law for the purpose, which is called jurisdiction. This consists in, *first*, authority over the subject matter; and, *second*, authority over the parties concerned. The first comes from the statutory law, which designates the particular proceeding as one of which the court may take cognizance when the parties are properly before it; the second comes from the proper institution of proceedings, and the service of process upon the parties concerned, or something which is by the statute made equivalent to such service." Jurisdiction of the subject matter "must come wholly from the constitution or statutes of the state." 2 Cooley, Taxation (3d ed.) p. 879.

That the tax lien is to be enforced "by an action in the nature of a foreclosure of a mortgage" means that the procedure shall be similar to the foreclosure of a mortgage, and there should be no severity unusual to that

sort of procedure. The act seems to contemplate the bringing of the parties before the court in the same way that they are brought before it when a mortgage is foreclosed. There should be no attempts by the courts to add to the statute by providing harsh measures that are penal in their character.

The notice was published in August and September, 1900. It was directed to "David G. Potter, and ———— Potter, his wife, * * * Central Nebraska Loan & Trust Company, A. D. Buckworth, first name unknown, J. I. Case Threshing Machine Company." An examination of the record leaves the matter perhaps in some doubt as to whether Potter and his wife were residing in Nebraska or South Dakota at that time, and Dr. Buckworth, it seems, was dead, having died about that time at North Platte, in Lincoln county. He was the president of the North Platte National Bank up to the time that it failed. The Potters and Buckworth should have been served with a summons so that the court might have jurisdiction. The Potters made the mortgage to Buckworth, and Buckworth or his legal representatives should have been served with a summons. Buckworth might have turned the note and mortgage over to the bank, but, if so, the bank should have been brought in. Under the evidence and the rule in *McCabe v. Reed,* 88 Neb. 457, Hoagland was shown to be the owner of the note, mortgage and decree.

While there may be some doubt about the facts, as the pleadings are very long and much involved, and the testimony voluminous, we are constrained, after a somewhat careful examination of the record, to modify our former opinion touching the length of time the notice for constructive service was published, and to hold that it was published the required length of time, four weeks, but we adhere to our former views as stated in the opinion filed November 28, 1911, that the testimony of the witness Davis is not sufficient to overcome that of Hoagland, supported as it was by his possession and production of the papers, and that Hoagland is not barred by the foreclosure

proceedings, which were so far void as to fail to convey title to Wilcox, and that he, said Hoagland, should be allowed to redeem from the tax lien by virtue of his ownership of the note and mortgage and decree of foreclosure based thereon, and by reason of the invalidity of the tax foreclosure proceedings upon which plaintiff's alleged title to the land is based.

As thus modified, we adhere to our former opinion, and the judgment of the district court for Lincoln county stands

REVERSED.

SEDGWICK, J.

I concur only in the result reversing the judgment of the district court.

LETTON, J., dissenting.

The evidence shows that Potter, the owner of the land, was a nonresident and that he was served by publication. Since the conclusion therefore rests upon that portion of the opinion which holds that a mortgagee is a necessary and indispensable party in an action to foreclose a tax lien under the statute of 1875, I am compelled to dissent. This is a new doctrine in this state and directly overrules what has heretofore been considered to be settled law. Moreover, the former cases are not specifically overruled. Since it is probable that lands have been purchased in reliance upon titles acquired under proceedings based upon the ruling formerly announced, the doctrine has become a rule of property which should not be interfered with. Neither do I agree to the proposition that such an action is purely one *in personam*. Its only purpose is to subject to sale a specific tract of land upon which the county and state have already acquired a lien, in order to pay the taxes levied and assessed against that particular tract. No personal judgment can be rendered and no deficiency enforced. It is an action *quasi in rem* and not purely *in personam*.

It is a settled rule in this state that a tax lien is superior to the lien of all other incumbrances, whether created before or after the inception of the lien. *Eddy v. Kimmerer*, 61 Neb. 498; *Merriam v. Goodlett*, 36 Neb. 384; *Mutual Benefit Life Ins. Co. v. Siefken*, 1 Neb. (Unof.) 860. A valid tax sale creates an independent title unconnected with and superior to all other interests. In administrative sales notice to the owner or occupant of the land is sufficient under the statute to bind all persons claiming interests therein. This is the general rule of other states. *Parker v. Baxter*, 68 Mass. 185; Black, Tax Titles (2d ed.) secs. 338, 340, 341.

We have held that the word "owner" in the 1875 statute, under which the foreclosure action was brought, means the same as when used in the general revenue law. In *Leigh v. Greene*, 62 Neb. 344, a like case to this, which held that one Patrick, a mortgagee, was not a necessary party, in the opinion by ALBERT, C., after reciting a number of provisions of the revenue law in which the word "owner" appears, it is said: "These, and many other provisions of the revenue act, clearly indicate that the legislature used the word 'owner' in the popular sense, the sense in which it is understood by the people at large; and having employed it in that sense in the other parts of the act, the inference is warranted that they used it in the same sense in the sections providing for the foreclosure of tax liens. *Tracy v. Reed*, 38 Fed. 69. At first sight, it may seem anomalous that a person should be concluded by a proceeding to which he was not a party and of which he had no notice. But it must be kept in mind that the procedure providing for the foreclosure of a tax lien is a part of the revenue system of the state, and that the necessities of a government will not always permit an overscrupulous regard for private rights. * * * In our opinion, Patrick was not the owner within the meaning of the statute, and the proceedings for the foreclosure of the tax lien were in substantial compliance with the statute, and conclusive against the whole world." This

case was appealed to the supreme court of the United States (193 U. S. 79), and affirmed upon another ground, but the holding of the opinion quoted, and in the same case on rehearing (64 Neb. 533), as shown in the fourth paragraph of the syllabus, as to the meaning of the word "owner" in this statute, has never been overruled or receded from by this court, and has several times been reaffirmed. *Clifford v. Thun,* 74 Neb. 831; *Hall v. Moore,* 75 Neb. 693.

It is certainly more in consonance with the proper conduct of the public business and the collection of money with which to carry on the affairs of government that the holder of a mortgage on a tract of land should be charged with the duty of protecting his lien by seeing, either that the taxes are paid by the owner of the equity of redemption, or by paying them himself, rather than by compelling the tax collector or the holder of the tax lien to search the records or to look for hidden liens, all of which by statute are subject and inferior to the lien of the taxes. The tax in this state is not levied upon the person owning the land or upon the lien holder. It is not a personal tax, and cannot be collected except from the land. It is the land itself that is charged with the payment. If the owner or occupant alone are entitled to notice in administrative sales, and a mere lien holder is bound to take notice of the statute, why is he not equally bound to take notice of other proceedings to enforce a tax which has been delinquent for years? I believe the former doctrine reaffirmed so recently by the court should be upheld. Even if the present construction might have been adopted at first, a rule of practice long approved should not be lightly set aside, especially when titles to land depend upon it. It is such vacillation that breeds litigation, since no lawyer can safely advise his client, when the court itself does not adhere to settled rules.

ROSE, J., concurs in this dissent.

The following opinion on motion for rehearing was filed December 18, 1912.  *Rehearing denied; former opinion modified:*

PER CURIAM.

A motion in the alternative for a rehearing, or for a modification of our former opinion by striking out of the statement in the opinion, "and that Hoagland is not barred by the foreclosure proceedings, which were so far void as to fail to convey title to Wilcox," the latter clause of said statement. Upon a reconsideration of the case, it is *held* that the motion for rehearing be denied, and the motion to modify sustained.  The words, "which were so far void as to fail to convey title to Wilcox," are therefore stricken out of our said opinion.

FORMER OPINION MODIFIED.